413 So.2d 982 (1982)
Lori Jean ALPHONSO
v.
CHARITY HOSPITAL OF LOUISIANA AT NEW ORLEANS, et al.
No. 12901.
Court of Appeal of Louisiana, Fourth Circuit.
April 16, 1982.
Writ Denied June 11, 1982.
*983 Robert D. Bjork, Jr., New Orleans, for defendants-appellees.
*984 Harry A. Burglass, Metairie, for plaintiff-appellant.
Before SCHOTT, WARD and KLEES, JJ.
WARD, Judge.
Lori Jean Alphonso was the victim of two rapes while she was a mental patient confined in the psychiatric ward of Charity Hospital, an agency of the State of Louisiana. She filed suit in the Civil District Court, claiming that Charity Hospital personnel were negligent in caring for her, and she has asked for damages for her injuries. The case was tried before the District Judge. His verdict was that Charity Hospital personnel were negligent in their care, and because of their negligence, Miss Alphonso was raped, and the State is liable for $50,000.00 damages for her injuries.
Although the State did not appeal, Miss Alphonso has, and the State has answered. Miss Alphonso contends the award is grossly inadequate to compensate for her physical injuries with the attendant pain and suffering, her emotional injuries, and for the medical expenses, past and future, directly related to those rapes. The State contends that the Trial Judge's award is fair and adequate, that it should not be disturbed because it was made after lengthy and thoughtful consideration, and that certainly the trial judge did not abuse his great discretion in determining the question of damages. Since the State did not appeal the trial court judgment that it is liable for damages, the only issue in this appeal is whether the Trial Judge's award of $50,000.00 is adequate. Although liability is not now questioned, we believe a brief review of Miss Alphonso's medical history and the facts proven at trial is essential to understand the nature and extent of Miss Alphonso's injuries and to answer the question of whether the award is adequate.
Before the rapes, Miss Alphonso had a history of mental illness which had been diagnosed as chronic paranoid schizophrenia, and treatment before this incident had consisted of hospital care and various psychotropic drugs. In April 1978, when she was eighteen, Miss Alphonso was committed to Charity Hospital by her parents after she suffered a severe psychotic episode. During her short stay there, Miss Alphonso was raped twice by a mental patient who was also confined to the psychiatric ward of Charity Hospital. The rapes occurred shortly after Miss Alphonso was admitted to the ward. The first occurred in the bathroom adjacent to her bedroom while she was heavily sedated; the second rape occurred the next afternoon in her bedroom while Miss Alphonso was fully awake. Because she was delusional and heavily sedated, Miss Alphonso's resistance to the first rape was minimal; however, she violently resisted the second rape, and her muffled screams were heard by hospital personnel, who caught the rapist in the act.
Miss Alphonso was taken out of Charity by her parents and was immediately admitted to Southern Baptist Hospital; later she was released and admitted to Touro Infirmary. After weeks of confinement, she was brought home, where she stayed with her mother and father. In May 1979, after returning home, Miss Alphonso discovered a love letter which had been written to her by the rapist, a deranged sexual deviant, and which expressed his intention to ravish her. Miss Alphonso's whereabouts had been discovered by the rapist through the negligence of Charity Hospital personnel. Because of the letter, Miss Alphonso became psychotic and irrationally believed she could protect herself through self-mutilation. In an attempt to save herself from any future rape attack, Miss Alphonso slashed most of her bodyneck, chest, legs and abdomen with a razor, to prevent the rapist from recognizing her and to make herself sexually unattractive to the rapist if she were recognized. She was immediately taken from her home and brought to Ochsner Foundation Hospital for treatment of her extensive wounds and her psychosis.
Miss Alphonso was released from Ochsner after two weeks, but the pattern of brief admittance to various mental institutions continued after the rape to the time of trial. While waiting for the trial, Miss Alphonso was confined in Coliseum House, and there *985 Dr. Anastasio, a psychiatrist, assumed responsibility for her medical care. After psychiatric and psychological evaluations, he concluded that Miss Alphonso was still seriously troubled by the rapes. After a brief stay for evaluation and treatment, she was released from Coliseum House. Unfortunately, stress in anticipation of the trial caused her condition to deteriorate, and she was confined a second time at Coliseum House for two weeks. After she was released, the case was brought to trial without a jury, since the State was a party defendant, and the complex issue of a proper award for damages was presented to the trial judge.
In deciding the issue of damages, several questions must be answered: (1) were physical injuriesthe self-mutilationproven by a preponderance of the evidence to have resulted from the rape, and were they erroneously omitted from the judgment awarding damages?; (2) were the damages awarded ($50,000.00) for emotional injuries post-traumatic stress disorder and rape-traumasufficient compensation for the particular injuries to this particular plaintiff?; (3) were medical expenses, past and future, proven by a preponderance of the evidence to have resulted from the rapes?
Before answering these questions, we believe we should state our understanding of the role of appellate courts in reviewing a trial court's award of damages. The Louisiana Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), stated:
We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.
And in Reck v. Stevens, 373 So.2d 498 (La. 1979):
Thus, the initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon the particular injured person is a clear abuse of the trier of fact's "much discretion" ... in the award of damages. It is only after an articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reasons, be considered either excessive ... or insufficient...
However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award....
Where error of a factual determination by the trial judge is alleged, however, a different standard is applicable. The Supreme Court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), stated that there must be
... a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).
So when a trial judge has considered a particular element of damages, the award for those damages should not be changed unless the record shows that the trial judge abused his great discretion. When, however, as here, it is argued that the trial judge has overlooked injuries clearly proven by a preponderance of the evidence, the issue is not whether this is an abuse of discretion; the issue is whether the record indicates the judgment is manifestly erroneous (clearly wrong). And if compensable injuries (when proven by a preponderance of the evidence and supported by the record) are not included in *986 the judgment, it is the function and duty of the appellate courts to amend the judgment to include reasonable compensation for the manifestly erroneous omission of damages.

PHYSICAL INJURIES
We, therefore, consider the first question: were physical injuriesthe self-mutilation proven by a preponderance of the evidence to have resulted from the rapes, and were they erroneously omitted from the judgment awarding damages? The trial court's judgment awarded $50,000.00 for "the enormous emotional damage inflicted by rape"; but the judgment omitted compensation for Miss Alphonso's physical injuries, although the trial judge had found they were "most probably a response to the incident." He undoubtedly relied upon the expert testimony of Dr. Roger Anastasio, who testified that these injuries were "a direct response to the letter." We believe Miss Alphonso is entitled to compensation for those physical injuries. The testimony of the witnesses and the very nature of the act, illogical but nevertheless understandable, convince us, as they did the trial court, that these self-inflicted wounds were proven by a preponderance of the evidence to have been caused by the rapes and the threatening letter she received from the rapist. Because we believe the Trial Judge erroneously omitted from his judgment an award of damages for these physical injuries, we find the judgment to be manifestly erroneous (clearly wrong) and amend the judgment to award damages for the multiple lacerations, pain and suffering, and temporary disfigurement.
In determining a proper award for these injuries, we considered the testimony and the Ochsner medical reports. The medical records indicate that although the wounds were superficial, they were serious in view of their number, and because of these wounds Miss Alphonso remained in Ochsner for two weeks. In evaluating the injuries and assessing damage, we compared damages awarded for similar injuries. In Miller v. Thomas, 246 So.2d 16 (La.1971), this court had reduced a district court award of $60,000.00 to $25,000.00 for facial lacerations and permanent scarring of a young female. The Supreme Court reversed and reinstated the $60,000.00 judgment. After comparing the injuries in that case with this case, we find $25,000.00 to be reasonable compensation for Miss Alphonso's physical injuries: multiple lacerations, temporary disfigurement, and the attendant pain and suffering, and we amend the judgment to include this amount as damages.

EMOTIONAL DAMAGE
We now consider the second question on the issue of damages: were the damages awarded ($50,000.00) sufficient compensation for the emotional injuries of post-traumatic stress disorder and rape trauma syndrome? Post-traumatic stress disorder has familiar symptoms: feelings of anxiety which result from an event that would create significant symptoms of stress in most people; feelings of re-experiencing the trauma; intrusive recollections of the event; and avoidance of activities or people which arouse these recollections. Miss Alphonso manifested all of these symptoms. Post-traumatic stress disorder injuries (formerly called traumatic neurosis) have been recognized as deserving compensation when proven to exist. In Humphries v. Delta Fire & Casualty Co., 116 So.2d 130 (La.App. 1st Cir. 1959), where the court awarded $12,000.00 for a traumatic neurosis from an automobile accident, the twenty-year-old case notes that even then the term was out of favor, but recognized the award as one for "pain, suffering, and other effects resulting from a neurosis precipitated or caused to become manifest by a tort ..." And a more recent case, LaLonde v. Weaver, 360 So.2d 542 (La.App. 4th Cir. 1978), awarded $45,000.00 for traumatic neurosis caused by an automobile accident, finding that the plaintiff was "withdrawn and suffering from a sense of general loss and hopelessness." In addition, Miss Alphonso manifests rape-trauma syndrome symptoms: shame, guilt, anger, rejection, and concern for her sexuality. These symptoms *987 of post-traumatic stress disorder and rape-trauma syndrome are distinct from the symptoms of schizophrenia.
The testimony convinces us, as it did the Trial Judge, that Miss Alphonso suffered a post-traumatic stress disorder and a rape-trauma syndrome. After evaluating the particular injuries to this particular person, the Trial Judge awarded $50,000.00 as compensation for these damages resulting from both rapes. As the trial court stated, "It is obviously most difficult to quantify in dollars the enormous emotional damage inflicted by rape." The Trial Judge, with great care and deliberation, considered both the post-traumatic stress disorder and rape-trauma syndrome, and his award of damages should not be disturbed unless that award was an abuse of the exercise of his great discretion. Although we are convinced that the award approaches the minimal damages that should be awarded for these injuries, it is not such an abuse of that discretion given to the trial courts that it would mandate reversal. Reck v. Stevens, supra. We will not disturb the award of $50,000.00 for emotional damage.

MEDICAL EXPENSES
We now consider the last question: were medical expenses proven by a preponderance of the evidence to have resulted from the rape? The trial judge concluded that Miss Alphonso had not proven by a preponderance of the evidence that medical expenses, past and future, were caused by the rape. We agree. It is difficult, if not impossible, to separate those medical expenses that were caused by the rapes from those expenses that would have been incurred had Miss Alphonso not been raped. Miss Alphonso had the burden of proving by a preponderance of the evidence that medical expenses incurred after the rapes were caused by the rapes, and she failed to do this. To illustrate why, it is necessary to summarize the testimony of two witnesses, Dr. Roger Anastasio and Dr. C. B. Scrignar, who are medical doctors and experts in psychiatry. Dr. Anastasio, her last treating physician, testified for Miss Alphonso and particularly described her injuries as a rape-trauma syndrome coupled with post-traumatic stress disorder, which he called an adjustment reaction. He believed her pre-existing schizophrenia was significant because it impaired her ability to resolve the trauma of the rapes; and, although most rape victims resolve the trauma within a year, Miss Alphonso was still suffering from it at the time of trial, more than two years later. However, Dr. Anastasio also testified that her schizophrenia, a biological disease caused by chemical imbalances, was not and could not be aggravated by the trauma of rape, although the symptoms previously in remission may become manifest.
Miss Alphonso's symptoms did, of course, become manifest after the rapes and she continued to have breakdowns; but it is the cause of these manifestations, the breakdowns, that is the essential question, and Dr. Anastasio was equivocal as to those causes. For example, he testified:
She would still have the illness [even if she were not the victim of a rape]. She could very likely still be breaking down. She might be breaking down secondary to other stresses. As I see it her delusions and hallucinations are colored by the effect of the rape. She has not effectively dealt with the rape because of her illness, and I think needs to be able to if she's going to become functional....
He said, in addition:
The hospitalization would be for the schizophrenia, you know, because of her schizophrenia, she can't handle almost any stress appropriately....
Further:
I think she could likely have continued to have breakdowns. What she is breaking down about is speculative. I think I could say she's having breakdowns secondary to the rape, you know, this is what she is breaking down about, because she is so ill, not necessarily because she was raped, because she is so ill....
In conclusion:
Given her history, she probably would have broken down again.
*988 Dr. C. B. Scrignar, a member of the faculty of the Tulane University School of Medicine, testified for the State, and his testimony was unequivocal. It was his opinion that Miss Alphonso's post-traumatic stress disorder was minimal, if any, probably because she was so severely mentally ill before, during, and after the rapes. He also testified that schizophrenics may have atypical responses to a trauma such as rape, and the rape-trauma syndrome may not be as severe as in normal females, and the post-traumatic stress disorder may be less. He concluded that Miss Alphonso probably suffered some post-traumatic stress disorder, but that it abated within a short time, and the usual psychotic symptoms of a paranoid schizophrenic reappeared. Therefore, medical expenses incurred after the rape must be attributed to Miss Alphonso's mental illness of schizophrenia, not to post-traumatic stress disorder caused by the rapes.
In view of the tentative opinion of Dr. Anastasio and the firm opinion of Dr. Scrignar, the trial judge was correct: Miss Alphonso failed to prove by a preponderance of evidence that the manifestations of her schizophrenia, her breakdowns, were caused by the rapes; hence, the medical expenses during those breakdowns were not proven to have resulted from the rapes. The Trial Judge did not commit manifest error when he denied damages for medical expenses, past or future.[1]
For these reasons, we amend the judgment to award $25,000.00 for physical injuries; we affirm that part of the judgment which awarded $50,000.00 for emotional injuries; we affirm that part of the judgment which denied past and future medical expenses, and we assess costs of the trial and the appeal to the State.
NOTES
[1] Although her hospitalization at Ochsner Foundation Hospital for treatment of her lacerations was proven by a preponderance of the evidence to have resulted from the rapes, Miss Alphonso did not introduce proof of the cost of this hospitalization or medical treatment at Ochsner during the trial of this case.