LOTTINGER, Judge.
This is an action ex delicto brought by plaintiffs, the owner, driver, and passenger of a car rear-ended by defendant, Cade Carter, Jr. The insurer of defendant’s car, State Farm Mutual Automobile Insurance Company (State Farm), and the car’s owner, Cade Carter, Sr., were also made defendants, with the latter being dismissed from the case because no basis for his liability was present. The plaintiff’s uninsured motorist insurer, General Accident Fire and Life Assurance Corporation, Ltd. (General), was later added as a defendant.
From a judgment finding defendants Cade Carter, Jr. and State Farm liable and awarding damages to plaintiffs, the defendants and one of the plaintiffs, Paula Johnson (the driver), appeal. Quantum is the only issue on appeal.
FACTS
On July 11,1980, Paula Johnson was driving her father’s car, with Julie Badeaux riding as a guest passenger. Ms. Johnson observed a large turtle ahead in her lane and slowed to avoid hitting it. After the turtle had crawled to the other lane, she began to accelerate when Cade Carter, Jr. struck the car from behind.
Ms. Johnson was examined by Dr. Lloyd Lautner two or three days after the accident. He diagnosed her as having a cervical strain (a whiplash) and prescribed a muscle relaxant, heat treatments, and the wearing of a cervical collar for seven days. X-rays taken proved negative.
Plaintiff-appellant then saw Dr. J. Willard Dowell, an orthopedic surgeon, on February 10,1981. He found Ms. Johnson to be still suffering some symptoms from the neck sprain, specifically that she said her neck “grabs on the side.” She had a full range of neck motion, though she complained of discomfort at the extremes of that movement. X-rays showed no bony *1165 injuries in her spine. The doctor concluded that he did not know why her symptoms of pain had persisted up until that time; he prescribed analgesics and muscle relaxants if her neck stiffened.
Plaintiff-appellant then saw Dr. George Y. Lohmann, a neurological surgeon on March 27, 1981. Dr. Lohmann examined her neck and conducted a neurological examination, which consisted of checks on her reflexes and sensory, and motor functions. He found that the paravertebral muscles were tender and were the site of some spasms. She complained that she experienced intermittent pains shooting in her arms which reached into her middle and ring fingers. Dr. Lohmann ordered some physical therapy treatments for Ms. Johnson, which were conducted. He saw her again on April 17, 1981; she had improved considerably. Dr. Lohmann saw her last on August 12, 1981, when she still complained of pains in her neck, arms and fingers which occurred about every three days. Physical therapy was again ordered. He thought it more probable than not that the patient would experience intermittent neck and back problems for the rest of her life, stemming from the injuries she received in the accident. He indicated that Ms. Johnson was now experiencing mild pain, but that she was more predisposed than would be an uninjured person to a further injury which might bring on greater pain and more movement restriction.
Plaintiff-appellant began physical therapy treatments on March 27, 1981. She received treatments three times a week for the next month, twice in May of that year, once in June, six times in August, six times in December, once in January, 1982, three times in February, and finally once in March of 1982. Richard Lane, the treating therapist, testified that Ms. Johnson had some muscle spasms in her upper back and some pain when she moved her neck. On her last visit plaintiff-appellant was given substantially the same treatment that she received on her first therapy session; small nodules were found in her neck muscles, which, even though they do not limit movement, are “quite tender.”
Plaintiff-appellant testified that she missed one week of work due to her injuries (for which she was paid). She returned to school at L.S.U. in the fall, where she experienced more pain and weakness in her neck and back. As a result she was unable to carry her books to class, she was prevented from playing raquetball or tennis, her concentration while studying was lessened, and she could not help her mother with household chores that required lifting objects. Ms. Johnson did, however, enroll and participate in an aerobics dance class at L.S.U. in the fall of 1981. She described the exercises as dance-oriented stretching; she said she participated in all of the exercises except those involving upper-body strength, which was corroborated by her instructor. Plaintiff-appellant concluded by saying that physical therapy has improved her condition considerably, although she is worried that in the future she will not be able to handle heavy machinery on the job as a nurse.
Dr. Steve Wilson, an orthopedic surgeon, examined Ms. Johnson at the request of the defendants. His full orthopedic examination lasted ten minutes, and x-rays were taken. Dr. Wilson found no evidence to explain the patient’s complaints, but acknowledged that pain caused by this type of injury may be intermittent. He did not conduct neurological tests as did Dr. Loh-mann. He concluded that he did not believe plaintiff-appellant’s injuries would be permanently disabling.
Ms. Julie Badeaux, plaintiff-appellee, was injured as a guest passenger in the car driven by Ms. Johnson. She said that her knees had bumped against the dashboard when they were hit from behind. She had had a deteriorating knee disease (chondro-malacia of the patella) before the accident which had been partially relieved through surgery conducted approximately seven years earlier on her right knee. According to her physician, Dr. John Thomas, Ms. Ba-deaux had experienced intermittent problems with her knees since then. He examined her six days after the accident and found bruises to both knees, a tenderness *1166 present, especially in the right knee, but no inflammation or swelling there. He said that this pre-existing condition made her more susceptible to injury than a person with healthy knees. He also said that it would be difficult to attribute any future problems with her knees to either the accident or the chondromalacia. He did not find that the corrections effected by the surgery to her right knee had been damaged. He did not prescribe physical therapy for her, but advised that she continue her normal activities. Ms. Badeaux also sustained a mild cervical sprain which cleared up within two weeks after the accident.
Plaintiff-appellee testified that she has experienced greater pain with increasing frequency in her knees since the collision. She said that this increased pain has curtailed some activities: she cannot walk up a flight of steps, cannot ride a bicycle, and cannot ride in a car for any appreciable distance without feeling pain from cramps.
TRIAL COURT
The trial court found the defendants Cade Carter, Jr., and State Farm liable to the plaintiffs for injuries and damages incurred from the collision. Paula Johnson was awarded $1,563.90 for her past medical expenses and $7,500.00 for her pain and suffering. Julie Badeaux was awarded $115.00 in special damages and $5,000.00 for her pain and suffering. The award to plaintiff Marcus Johnson for repairs to his car is irrelevant to the appeal.
SPECIFICATIONS OF ERROR
The plaintiff-appellant, Paula Johnson, alleges that the trial court erred in not awarding to her any damages for future medical expenses or future pain and suffering.
Defendants-appellants maintain that the trial court erred in awarding excessive amounts in general damages to both Paula Johnson and Julie Badeaux.
DAMAGES TO PAULA JOHNSON
As stated above, Paula Johnson sustained a cervical strain. It suffices to say that Ms. Johnson maintains that the pain in her neck and back, though lessened by physical therapy sessions, is occasionally great enough to prevent her from performing acts involving upper body movement and strength. Her treating doctors and physical therapist found objective evidence of these subjective complaints. Dr. Lohmann, the neurological surgeon, stated that Ms. Johnson will probably experience intermittent neck and back “problems” for the rest of her life, though he was not sure whether physical therapy treatments would be necessary or not. Defendant’s doctor, who briefly examined Ms. Johnson, found no outward signs to explain her continued discomfort and expected no permanent disability.
Addressing plaintiff-appellant’s arguments first, we find that the trial court committed no error.
When the quantum of dairfáges is attacked by a party on appeal, our court will inquire whether the trial court’s award is a clear abuse of its much discretion under the facts of the case. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
When, however, it is argued, as plaintiff-appellant does here, that the trial court has ignored an element of damages that has been proven by a preponderance of the evidence, the inquiry is different. The issue is then whether the trial court’s determination is manifestly erroneous (clearly wrong) upon examination of the record. Alphonso v. Charity Hospital of Louisiana at New Orleans, 413 So.2d 982 (La.App. 4th Cir. 1982).
The trial court did not award any damages for future medical expenses to Ms. Johnson. Of the three physicians who treated her, only Dr. Lohmann speculated that she probably would have intermittent “problems” with her neck and back. He was not definite as to the need for future physical therapy treatments, but only suggested they would be prescribed if her *1167 symptoms recurred or if she sustained another similar injury.
This scant evidence is not enough to render clearly wrong the trial court’s determination that future medical expenses were not proved, especially in view of Ms. Johnson’s own testimony that the past physical therapy sessions had helped her a good deal, suggesting that physical therapy had outlived its usefulness for her (or soon would).
Turning to plaintiff-appellant’s second contention, it is not clear that the trial court, awarded the $7,500.00 to Ms. Johnson solely for her past pain and suffering and thus gave her nothing for future pain and suffering. The trial court merely designated this sum as an award for “general damages.” We are of the opinion the better interpretation is that the award is for both past and future general damages; thus, plaintiff-appellant’s argument falls.
Defendants-appellants assert that the award for general damages to Ms. Johnson ($7,500.00) is excessive. Because of the recited facts above, we find no abuse in the trial court’s great discretion here.
DAMAGES TO JULIE BADEAUX
The defendants-appellants claim here that the award to Ms. Badeaux for general damage ($5,000.00) was excessive. Several cases have been presented to us where lower awards for similar injuries were approved.
Such comparison with other cases is only proper where an abuse of the trial court’s discretion is first found. We find no such abuse here, considering the above.-recited facts concerning Ms. Badeaux’s injuries. Coco v. Winston Industries, Inc., supra.
Therefore, for the above and foregoing reasons, the trial court’s judgment and awards are affirmed at defendant-appellant’s costs.
AFFIRMED.