541 So.2d 211 (1989)
Marshall JORDAN
v.
Don HUBBARD, et al.
No. 88-CA-1507.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1989.
*212 Roy J. Rodney, Jr., Elise Marie Beauchamp, McGlinchey, Stafford, Mintz, Cellini and Lang, PC, New Orleans, for plaintiff/appellee.
Leroy A. Hartley, New Orleans, for defendant/appellant.
Before SCHOTT, C.J., and KLEES and WILLIAMS, JJ.
SCHOTT, Chief Judge.
After a trial by jury plaintiff, Marshall Jordan, obtained a $35,000 judgment against defendant, Don Hubbard for damages resulting from assault and battery. On appeal by defendant the principal issue is the quantum of damages. Other issues involve rulings by and conduct of the trial judge which defendant claims were erroneous and prejudicial, especially his denial of defendant's motion for a new trial based on discovery of a witness after trial.
On March 30, 1985 an election was being conducted in eastern New Orleans for the office of assessor. Plaintiff and defendant were supporting rival candidates. Plaintiff and his companions were removing campaign posters and signs from public property near the headquarters of defendant's organization, SOUL, when defendant struck plaintiff. Defendant claimed plaintiff was about to strike him with a stick and he struck plaintiff in self defense. Plaintiff claimed defendant struck him from behind without warning and without provocation. Each party called a number of witnesses to corroborate his version.
Plaintiff called a police officer who testified over defendant's objection that a witness told him defendant struck the plaintiff. The ruling by the trial court though erroneous did not prejudice defendant. There is no question but that he struck plaintiff; he maintains that he was justified in doing so. The objectionable testimony does not touch on the issue of justification for the battery.
After trial defendant moved for a new trial on the ground of newly discovered evidence. He claimed that a witness contacted him after reading about the jury verdict in the newspaper and could offer testimony to show that plaintiff was always aggressive and had psychological problems before the battery on him. He claims entitlement to a new trial by virtue of LSA-C.C.P. art. 1972(2) which mandates a new trial. "[W]here the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial." The incident occurred on March 30, 1985 and the trial took place in November, 1987. Apparently, the trial judge was not convinced that the defendant could not have produced the witness despite the exercise of "due diligence". The record supports this conclusion.
Defendant specifies two errors in connection with the judge's instructions to the jury and one during closing argument in plaintiff's behalf. But these objections were waived by defendant's failure to object contemporaneously. C.C.P. arts. 1635, 1793. By his remaining specification of error defendant contends that the verdict was excessive because it included damages for psychological injuries which were not proven by plaintiff.
After being struck plaintiff was taken unconscious to Charity Hospital for emergency treatment. On April 3, 1985 he saw Dr. Susan Boston, a neurologist who had a CAT scan and an EEG run on him at Touro Infirmary. On June 3, 1986 he saw Dr. Beverly A. Howze, a clinical psychologist. Plaintiff testified that his medical expenses consisted of $196 for Charity Hospital, $50 for Dr. Boston, $468 for Touro, and $110 for a Dr. Hardy who interpreted an EEG run at Charity Hospital. Since plaintiff suffered minor physical injuries and incurred only $842 in medical expenses the greater part of the $35,000 verdict was *213 for humiliation, mental anguish, and psychological injury.
Dr. Boston testified that she saw plaintiff on April 3, 1985. His complaints were of intermittent headaches, nausea and vomiting for the first two days after the incident, blurred vision, difficulty concentrating, "slowed down", i.e. not as alert or as quick with motor responses and thought process, weak, anxious, hostile, and apprehensive. She diagnosed a concussion and had a CAT scan and EEG run. She reviewed these tests and concluded they were basically normal. In her opinion there can be no causal relationship between a head injury and paranoid schizophrenia which comes from a biological imbalance in the central nervous system. Furthermore, she stated that nothing in the medical literature suggests that a head trauma can trigger paranoid schizophrenia.
On June 3, 1986 plaintiff saw Dr. Howze who testified as follows: Before the visit he called her on the telephone and gave her the impression that he was highly agitated and there was a sense of emergency about his condition. When she saw him he had symptoms of agitation, stress, and disorganized thinking. In conversation he kept "flashing back" to the incident sued on. His emotional condition was critical. His history revealed that between 1980 and 1983 his parents, a grandmother and two siblings died. Dr. Howze made the following observation about his history:
So I saw him as having a, what I would best describe as a personality disorder which had formed as a result of all of those early, trying, difficult, painful kinds of depressive circumstances of his early life leading up to the point where he actually experienced this trauma during this campaign.
Dr. Howze diagnosed plaintiff's condition as post-traumatic stress syndrome. She explained this condition as one in which a trauma will affect the victim long after it took place so that even years after the victim responds to the event as though it just happened. She further opined that the present trauma interacted with his previous emotional status so as to stimulate a schizophrenic reaction.
Asked about this diagnosis of schizophrenia Dr. Howze stated that plaintiff had become delusional and paranoid, withdrawing and limiting his activities and avoiding contacts with friends out of fear of being hurt, and he admitted auditory hallucinations. Asked whether plaintiff had this schizophrenic condition before 1985 she replied that it was difficult to say with certainty but she didn't think so because he had previously been progressing in school and operating at least marginally within normal limits, but when she saw him he was far outside those limits. She stated that the event could have precipitated and encouraged the schizophrenia to surface and become "florid" and could have aggravated his condition.
After his first visit Dr. Howze saw plaintiff a second time a few weeks later. She stated that his prognosis was poor and she recommended hospitalization for about two months treatment with drugs and five years of psychotherapy. She estimated the cost of the hospitalization at $30,000 and the therapy at $23,000. She was asked whether his condition requiring this treatment was definitely related to the incident sued on and she replied:
A Yes. The post-traumatic stress syndrome I definitely attached to the incident. Additional to that, it is clear that the schizophrenia followed from that in my estimation. Particularly given the fact that he had gone through school, successive years in school successfully.
Dr. Howze saw plaintiff shortly before trial in November, 1987 and by that time she had reviewed the Charity Hospital records. She disagreed with Dr. Boston about the EEG and thought it was abnormal and supported her theory that plaintiff's schizophrenia was "engendered or precipitated as a result of that singular act." She also differed with Dr. Boston concerning testimony by plaintiff's witnesses that he suffered some sort of a seizure after being struck by defendant. Dr. Boston stated that nothing in the Charity Hospital records indicated that such a seizure *214 had occurred but Dr. Howze stated that the records did indicate that such a seizure had occurred.
On cross examination Dr. Howze testified that plaintiff's symptoms had remitted to a great extent by trial time. By then he was successfully attending law school largely because he has a superior IQ. However any incident could cause him to revert back to the condition he was in when she first saw him in June, 1986. Asked whether the incident caused his emotional problems to surface she stated:
His emotional status was exacerbated at that time and what came to the surface was a lot of disorganized thinking, paranoid idealization, emotional kinds of things. It is not that the losses all of a sudden came to the surface but that his emotional status became dramatic at that point in time.
A fair reading of Dr. Howze's testimony establishes that plaintiff was emotionally unstable before the incident sued on and this aggravated his instability, produced a post-traumatic stress syndrome, and possibly caused a pre-existing paranoid schizophrenic condition to come to the surface. The question is whether her unsupported testimony is sufficient to prove causation or aggravation of plaintiff's condition such as to justify the jury's verdict.
It is well established that medical testimony is usually required to establish a mental or psychic disorder. Coco v. Richland General Contractors, Inc., 411 So.2d 1260 (La.App. 3rd Cir.1982), writ denied 413 So.2d 909 (La.1982). In dealing with the type of evidence required to prove traumatic or conversion neurosis the court in Deviliver v. Traders & General Insurance Company, 321 So.2d 55 (La.App. 3rd Cir.1975), writ denied 325 So.2d 273 (La.1976), observed that since the symptoms are vague, nebulous and subjective, courts should exercise great caution in allowing recovery for such a condition. In tort actions proof of the existence of conversion neurosis and its causal relationship to the incident sued upon must be presented in clear and convincing fashion. The same principles apply to plaintiff's post-traumatic stress syndrome.
The weakness of plaintiff's case is the absence of medical testimony. The basis for his recovery for mental problems is the testimony of Dr. Howze who is not a medical expert at all but a clinical psychologist. The complexity of the problem of the proof required for recovery where schizophrenia is involved can be appreciated from Alphonso v. Charity Hosp. of Louisiana, 413 So.2d 982 (La.App. 4th Cir.), writ denied 415 So.2d 952 (La.1982). There a schizophrenic patient was raped twice while in Charity Hospital. The problem was to separate those expenses which were caused by the rapes from those which would have been incurred anyway because of plaintiff's schizophrenia. Two psychiatrists testified. One, Dr. Anastasio, described her injuries as a rape trauma syndrome coupled with a post-traumatic stress disorder. He thought her pre-existing schizophrenia was significant because it impaired her ability to cope with the rapes. However, he testified that her schizophrenia which is a biological disease caused by chemical imbalances could not be aggravated by the trauma of rape. He did allow that the symptoms of schizophrenia previously in remission might become manifest with trauma but his testimony as summarized in the opinion indicated that such manifestations would not be prolonged and her problems would soon be the same as if the trauma had not occurred. This testimony supports Dr. Boston's rather than Dr. Howze's testimony.
There is no proof in this record that plaintiff is a paranoid schizophrenic. We are convinced from Dr. Boston's testimony and the Alphonso case that the trauma could not have caused him to become a schizophrenic. Dr. Anastasio's testimony in the Alphonso case does seem to support Dr. Howze's theory that a trauma could cause symptoms of schizophrenia to become manifest or to "surface" as Dr. Howze described it. Therefore, if Dr. Howze's theory has any validity at all, plaintiff had to be a paranoid schizophrenic before the incident and it was his burden to prove what damages were caused by the *215 trauma as opposed to those which would have been sustained had the trauma not occurred at all.
Without medical testimony plaintiff's evidence was insufficient to prove his case even if Dr. Howze's testimony was more convincing to the jury than Dr. Boston's. However, even assuming that plaintiff could prove his case with the unsupported testimony of a clinical psychologist Dr. Howze's testimony was not convincing. She based her testimony almost exclusively upon the history plaintiff gave in their first visit. She discovered that plaintiff had emotional problems and had been involved in at least one confrontational incident in 1982. Plaintiff testified about yet another such incident in 1983. Plaintiff was in school and tutoring before the incident and finished undergraduate school and went on to law school by the time of trial. Dr. Howze attached significance to the fact that the incident sued on took place in the presence of plaintiff's friends, but he stated that he hardly knew the individuals he was working with.
Just as the court in Alphonso was convinced by solid psychiatric testimony that the terrible trauma of two rapes did not cause any significant schizophrenia related damages we are convinced that the trial court erred factually and legally in finding schizophrenia-related damages resulting from a punch in the head where there was not medical evidence to support it. We have concluded that the award of $35,000 constitutes an abuse of the trial court's discretion and that the most the court could award in its discretion was $10,000.
Accordingly, the judgment appealed from is affirmed but amended to reduce the award to $10,000.
AMENDED AND AFFIRMED.