568 So.2d 1139 (1990)
Beverly NICHOLAS
v.
Joseph P. VOIRON, Jr., Louisiana Refuse Service, Inc., and National Fire and Marine Insurance Company.
No. 90-CA-210.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1990.
*1140 Law Offices of Eugene Barriffe, Jr., A Professional Law Corporation, Eugene Barriffe, Jr., Mary Anne Mumme, New Orleans, for plaintiff-appellant.
Lozes & Cambre, David M. Cambre, New Orleans, for defendants-appellees/cross appellants.
Before CHEHARDY, C.J., and GAUDIN and GRISBAUM, JJ.
CHEHARDY, Chief Judge.
Plaintiff Beverly Nicholas instituted this tort action to recover damages for personal injuries she sustained in an August 15, 1985 two-vehicle accident. When the garbage truck traveling in front of her lost control, Nicholas swerved to the right and applied her brakes. Her station wagon skidded, entered a ditch and overturned.
Nicholas sued the garbage truck driver, Joseph P. Voiron, Jr., the owner, Louisiana Refuse Service, Inc., and their insurer, National Fire and Marine Insurance Company. She sought recovery for: property damage, medical expenses, transportation for medical treatment, nursing and housekeeping services, lost wages, lost earning capacity, physical pain and suffering, mental anguish and residual disability.
At bench trial the district court found defendant Voiron 40% at fault and held plaintiff Nicholas 60% comparatively negligent in causing the accident. It awarded Nicholas $15,000 for soft tissue cervical injuries of one year's duration with associated mental anguish. Her recovery was reduced to $6,000 by the percentage of her comparative fault. Nicholas appeals both the liability and quantum verdicts. Defendants have answered the appeal challenging their assessment of fault. We affirm.

FACTS
U.S. Highway 90 east is a two-lane asphalt highway where it intersects with Lapalco Boulevard. In addition there is a 535-foot right-turn lane which accesses Lapalco. To the right of the turn lane is a gravel shoulder. The intersection is governed by a traffic semaphore.
The testimony of plaintiff Nicholas and defendant Voiron as to how the accident occurred is in direct contradiction. Nicholas stated that she was traveling east on U.S. Highway 90 in the right travel lane at 35 to 40 miles per hour just after noon. It was raining heavily; the sky was overcast. In her rearview mirror plaintiff observed the garbage truck overtaking her. The truck moved to the left lane and passed her; Nicholas reduced her speed. The truck cut back into the right travel lane and began to fishtail, skidding from lane to lane. Nicholas was two to three car lengths behind the truck.
*1141 At the Lapalco Boulevard intersection the garbage truck came to an abrupt stop in response to a yellow light. To avoid a rear-end impact, Nicholas steered or swerved her car from the right travel lane into the right-turn lane. There were no vehicles in the right-turn lane at the intersection. Nicholas swerved to the shoulder, her car skidded and entered the roadside ditch.
Nicholas testified that she swerved hard to the right in response to the garbage truck's stop. She felt her car skid. She had no idea how she ended up in the ditch.
Defendant Voiron stated that he was traveling at approximately 35 miles per hour in the right travel lane, following a red and black compact car. He denied having passed Nicholas in the left lane. The light at the Lapalco Boulevard intersection changed quickly. The compact car stopped short in front of the garbage truck. Fearing impact with this car, Voiron maneuvered his truck to the left lane, he hit a bump. The truck began to swerve. He released the brake and down-geared, the truck straightened and came to rest in the right lane at the intersection.
Voiron testified that he looked in the mirror and saw Nicholas' brown station wagon in the left lane approaching him, tail lights first. Nicholas steered her vehicle into the right travel lane, to the right-turn lane, and skidded into the ditch.
After the accident Voiron moved his truck to the shoulder of the highway across the intersection. Voiron denied losing control of his vehicle. He admitted to having at least one slick tire on the garbage truck.
Colonel Joseph Andre was qualified as defendant's expert in traffic safety and accident reconstruction. In his opinion plaintiff's testimony that she was traveling two or three car lengths behind the garbage truck indicated that she was following too closely. He considered the rainy weather and wet road conditions as well as the reduced tread on plaintiff's car tires. Colonel Andre calculated that if plaintiff was traveling 35 miles per hour she required a minimum of seven car lengths or 150 to 175 feet to stop safely behind the garbage truck when it stopped at the intersection.
Plaintiff offered the investigating officer Clennard Ross as an expert in accident reconstruction. Officer Ross had been on the state police force and had investigated 400 collisions prior to this accident. On arrival at the scene he interviewed defendant Voiron, who stated that he was traveling in the right travel lane when he saw the light change. He hit his brakes and swerved toward the left. He eased off of the brake, the truck continued to slide and stopped abruptly at the intersection blocking both travel lanes.
Nicholas stated that she was traveling behind the garbage truck. When the truck started to swerve she hit her brakes and tried to steer to the right to avoid a collision. The truck was blocking both travel lanes so she ran off the road.
At the scene Officer Ross observed grease marks on the wet roadway which he believed were consistent with the garbage truck swerving or skidding. He testified that Voiron had lost control of his vehicle. He did not believe that plaintiff was inattentive or following too closely. He testified that when the garbage truck blocked both travel lanes, Nicholas took the appropriate evasive action by steering to the right. Based on traction marks in the gravel shoulder made by plaintiff's right tires he opined that plaintiff had kept her vehicle under control until her car hit the gravel. The car left the roadway 300 feet short of the intersection.
The trial judge found that Voiron was at fault in causing the accident. He further found that Nicholas had contributed to the accident by failing to keep her vehicle under control in the right-turn lane where she had a sufficient unobstructed distance to stop safely.

LIABILITY
This case is governed by the principles espoused in LSA-C.C. arts. 2315 and 2323. A motorist is obliged to operate his vehicle cautiously and prudently and to keep a proper lookout for hazards. It is *1142 unlawful for the driver of any vehicle to negligently fail to maintain reasonable and proper control while operating his vehicle on the public roads of the state. LSA-R.S. 32:58.
We agree with the district court finding that defendant Voiron breached the duty of reasonable care in operating the garbage truck. The condition of the roadway and of his vehicle required him to drive in a careful and cautious manner. His own testimony supports the conclusion that he failed to maintain proper control of his vehicle and initiated the emergency road situation.
The record also supports a finding of plaintiff Nicholas' comparative negligence. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." LSA-R.S. 32:81(A). A following motorist is entitled to rely on the assumption that the car ahead is being driven with care and caution and that the driver will not commit acts of negligence that will endanger the following vehicle. At the same time the following driver must drive at an appropriate speed and must maintain an interval between the vehicles as would enable him to avoid a collision with the leading car under circumstances which should be reasonably anticipated. Rizzuto v. Bracamontes, 310 So.2d 132 (La.App. 4 Cir.1975).
In view of the approaching intersecting roadway and because of the preceding vehicle's swerving, plaintiff Nicholas should have anticipated the garbage truck's abrupt stop. She breached this duty; she was following too closely where the garbage truck halted. Volkswagen Insurance Company v. Tamburello, 210 So.2d 136 (La.App. 4 Cir.1968).
The fact that Nicholas avoided impact with the garbage truck is of no moment. The proximate cause of her car overturning was her overreaction to the garbage truck halting. Had she maintained control of her vehicle she could in all probability have steered her car into the right-turn lane where she had ample unobstructed distance to stop safely. Because she failed to take this course of action she was comparatively at fault in causing the accident.
We are not persuaded by plaintiff's contention on appeal that because she was confronted with an unexpected road hazard her action cannot be characterized as comparative negligence. The sudden emergency doctrine states that one who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). The rule obtains to exculpate the following driver only if he is proceeding prudently and cautiously and does not apply if the emergency in which he finds himself is brought about by his own negligence. If Nicholas had been keeping a proper lookout, in view of the road, weather and traffic conditions, there is no reason why she could not have halted her vehicle without either rear-end collision or running off of the roadway. Plaintiff did not exculpate herself from a finding of fault and her comparative negligence serves to reduce her recovery. Accord, McAllister v. Ruffin, 451 So.2d 686 (La. App. 2 Cir.1984).
On appeal defendants submit that the trial court gave unjustified weight to the testimony of Officer Ross in finding defendant Voiron negligent. Officer Ross was offered as an expert in the field of accident reconstruction. He testified by deposition and was never formally accepted as an expert by the trial court. In the opinion of Colonel Andre, defendants' expert, Officer Ross did not possess sufficient qualifications to render an opinion on the cause of the accident.
"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to *1143 determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
LSA-C.E. art. 702. According to the article's comments, the criterion for admissability of opinion testimony is whether the particular specialized knowledge would assist the trier of fact to understand the evidence or to determine a fact in issue. The article permits the expert to testify on such matters if the court concludes that his testimony would be helpful to the trier of fact.
Without ruling on whether the trial judge tacitly accepted Officer Ross as an expert, we find that he was within his discretion as trier of fact if he admitted the opinion testimony. The trial judge was obliged to evaluate the credibility of all witnesses. Canter v. Koehring Company, 283 So.2d 716 (La.1973). As such he was free to accept the testimony he believed, to reject that which he did not, and to draw reasonable inferences of fact from all versions of the accident presented. The reasons for judgment do not indicate that the trial judge gave any, much less undue, weight to the opinions of Officer Ross. If he did the factual inferences he drew were reasonable. If he did not, the evidence of record, particularly the testimony of defendant himself, provides a reasonable factual basis for the conclusion that defendant Voiron was partially at fault in causing the accident.
There is no manifest error in the trial court's finding of causation or in its assessment of the percentage of fault. Rosell v. Esco, 549 So.2d 840 (La.1989).

QUANTUM
On appeal plaintiff Nicholas contends that her damage award is inadequate. In granting monetary recovery, the trier of fact is obliged to fashion the award particularly. It must consider the particular effect of the particular injuries on the particular plaintiff. Reck v. Stevens, 373 So.2d 498 (La.1979). Our analysis of the facts and circumstances peculiar to this case and this individual plaintiff supports the conclusion that the district court did not abuse its discretion in making the award; it is neither inadequate nor excessive. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
On August 16, 1985, the day following the accident, plaintiff was examined by Dr. Phillip Jones at the office of Gulf Coast Medical Consultants. She gave a history of having been run off of the road in an automobile accident and complained of headaches and pain in the neck and left hip. On physical examination the doctor found decreased motion with pain in the plaintiff's cervical spine and trapezius muscles, but no neurological damage. Dr. Jones diagnosed plaintiff's injury as a cervical sprain and prescribed conservative treatment. Plaintiff underwent in-clinic physical therapy treatments at first two to three days a week gradually reducing to once a week through February 1987. Plaintiff Nicholas was alternatively seen by Dr. Jones and his associate Dr. Stewart Altman. Her neck pain lessened; her range of motion gradually improved. Plaintiff continued to complain of intermittent headaches. Nicholas' February 1986 neck examination was essentially normal. Dr. Jones believed that plaintiff had achieved maximum benefit from therapy. He discharged her with a referral for neurosurgical consult for continued headaches.
Dr. Altman testified that he agreed with the diagnosis of cervical and trapesius muscle sprain; he believed that plaintiff's headaches resulted from a ligamentous injury. He stated that throughout the course of therapy plaintiff had enjoyed overall improvement of her neck and back complaints; at discharge her complaints were resolving. The doctor placed no restrictions on plaintiff and stated that in his opinion she could perform all household tasks.
Plaintiff saw Dr. Jose Garcia Oller, neurosurgeon, in consultation in February 1986. She complained of daily, severe long-lasting headaches with intermittent neck and back stiffness. An MRI conducted on plaintiff's cervical spine showed a *1144 mild buldge at the C 3-4 level without evidence of nerve root or spinal cord compression.
By her second, October 1986 visit plaintiff had recovered full neck function and her headaches were lessening. Dr. Oller believed that plaintiff had sustained a cervical sprain and that her headaches were the result of the anxiety and tension associated with the accident. As of this final examination his opinion was that plaintiff could function normally and engage in unrestricted activities as a mother and housekeeper.
At defendants' request plaintiff was examined by Dr. Carl Culicchia, neurosurgeon, on March 14, 1986. She presented with complaints of neck, shoulder and low back pain and headaches in the temporal region. Her neurological examination was objectively normal. Based on this and his subsequent March 1987 examination, the doctor testified that plaintiff had no neurological disability that would prevent her from functioning normally.
There was no real dispute over the extent of Nicholas' physical injuries. The record supports the trial court's conclusion that plaintiff sustained a non-operable neck and back injury of six months' duration which resolved with conservative treatment. Nicholas presented no persuasive proof of residual disability. She was therefore rightly entitled only to compensation for pain and suffering associated with short-term, soft-tissue injury.
Plaintiff Nicholas seeks a quantum increase to compensate her for severe emotional trauma which she claims was caused by the accident. In brief she suggests that $95,000 would adequately compensate her for both her physical and emotional injuries.
Nicholas was first examined by psychiatrist Dr. Chester B. Scrignar in July 1986, 11 months post accident. Her complaints were headaches, dizziness, flashbacks of the accident, body trembling, troubled sleep, grouchiness, fear of driving and nightmares. The doctor conducted a mental status examination which consisted of three interviews with and his observation of plaintiff. He performed an anxiety source profile study by which he analyzed plaintiff's own answers to a questionnaire which inquired into whether there had been any change in her emotional functioning before and after the accident. Plaintiff attended nine sessions with Dr. Scrignar: once in July 1986, three times in August 1986, once in January 1987, once in April 1987, once in May 1987, and once in June 1987. Dr. Scrignar diagnosed plaintiff as depressed and found that she was a victim of post-traumatic stress disorder. At trial he testified that plaintiff required additional psychotherapy and rehabilitation to readmit her to the work force. Psychiatrist Dr. Richard Roniger examined plaintiff at defendants' request in January 1989. She reported experiencing a troubling neck in the morning, back pain on bending and headaches. She was not under psychiatric care or taking any medication at the time of the examination.
Dr. Roniger performed a mental status examination, essentially an interview and observation of plaintiff. He observed no gross neurological deficits or organic impairment. Plaintiff told him that her memory was very good, now and then she thought about the accident. Dr. Roniger found no evidence of post-traumatic stress disorder or other psychiatric illness in Nicholas and no contraindication to her performing any tasks of which she was physically capable. He believed that Dr. Scrignar's anxiety source profile was totally subjective and was therefore not a useful diagnostic tool.
Nicholas did not report her multitide of physical and emotional symptoms to any other treating or examining physician. In November 1985 she mentioned to Dr. Altman that she had been having nightmares about the accident but that these were gradually lessening. The sole import of plaintiff's trial testimony with regard to psychiatric injuries was that when someone talked to her about the accident or when she observed a roadway collision she recalled her own experience.
In layman's terms post-traumatic stress disorder, formerly traumatic neurosis, *1145 is the condition whereby, as a result of being subjected to trauma outside of the range of usual human experience, which has the potential for causing either physical injury or damage to one's integrity the victim develops physical and emotional symptoms of lasting proportion which in some measure debilitate or incapacitate his functioning on a day-to-day basis. Manifestation of the illness is compensable, but like any other item of damage, only when it is shown by a preponderance of the evidence to exist and to have been caused by the accident. Alphonso v. Charity Hosp. of Louisiana, etc., 413 So.2d 982 (La.App. 4 Cir.1982); cf. Jordan v. Hubbard, 541 So.2d 211 (La.App. 4 Cir.1985).
The trial judge had the opportunity to evaluate the medical proof and more importantly plaintiff's own testimony as to the existence and severity of her psychiatric symptoms. He specifically found that while Nicholas experienced post-accident stress and anxiety it was neither severe nor debilitating. He awarded plaintiff a sum which in his reasoned judgment was adequate compensation for both her soft-tissue injuries and her mental anguish. His award is not an abuse of discretion. See, e.g. Clement v. Torres, 503 So.2d 91 (La. App. 5 Cir.1987).
Nicholas was not employed at the time of the accident. Initially she sought recovery for lost wages and loss of earning capacity. At trial she waived her claim for past economic losses. On appeal plaintiff contends that the trial court erred in failing to grant her an award for lost earning capacity. She urges that her inability to earn future wages was caused by the injuries she sustained in the August 15, 1985 accident.
We agree with the precept that a person's employment or lack of employment at the time of the accident and injury is not determinative. When a claim for future economic losses is made the measure of recovery is calculated on an injured person's ability to earn money and his impairment of earning power as a result of the accident. Folse v. Fakouri, 371 So.2d 1120 (La.1979). We further subscribe to the reasoning contained in Folse that compensation is owed when the injury done plaintiff has deprived him of the capacity to earn. Id. at 1124. The trier of fact possesses considerable discretion in making awards for loss of future earnings because of the speculative nature of those awards and because this type of award cannot be calculated with mathematical certainty. For this very reason a factfinder cannot grant an award for future economic losses in the absence of sufficient proof that the accident and injury impaired plaintiff's earning power. At trial Nicholas did not prove by a preponderance of the evidence that the automobile accident disabled her from gainful employment.
During her adulthood plaintiff has held various employment as a service station attendant and in the fast food industry. She was last employed for three months in 1981 at Shoney's as a waitress/housekeeper, and voluntarily gave up her job to care for her children.
At their final examinations neither Dr. Altman nor Dr. Oller found plaintiff to have any type of residual disability. Defendants' experts Drs. Culicchia and Roniger concurred in this conclusion without reservation. Dr. Oller testified that during her February 1986 examination plaintiff reported that she was doing all of her own housework and caring for her children. Dr. Roniger testified that during his January 1989 interview plaintiff stated that she had worked for several months after the accident.
While Dr. Scrignar felt that Nicholas was in need of additional psychotherapy he placed no restrictions on her employment. He recommended return to work as beneficial for plaintiff's condition.
In contrast Nicholas testified that she could not stand for long periods of time or lift her daughter due to left leg pain. She could not perform her own housework without pain and therefore could not attempt employment in the field of hotel housekeeping or as a cashier. She had applied with a variety of employers but was questioned as to the accident and her injury.
*1146 Read liberally plaintiff's testimony suggests difficulty in seeking employment. Yet in light of the overwhelming contradictory testimony we agree that plaintiff did not prove by a preponderance of the evidence, either by her own lay testimony, or by supporting testimony or documentation, that she was unable to obtain gainful employment as a result of the injury she sustained in the collision. Recovery for future economic losses was properly denied.
There is no preponderance of evidence to support an award for property damage, transportation for medical treatment, nursing and housekeeping services or residual disability. Recovery for these items was properly denied.

DECREE
For the reasons stated herein the district court judgment on both liability and quantum is affirmed. Costs of this appeal are assessed equally to plaintiff and defendants.
AFFIRMED.