229 So.2d 169 (1969)
L. C. CROCKETT et al.
v.
UNITED STATES FIDELITY & GUARANTY COMPANY et al.
No. 7775.
Court of Appeal of Louisiana, First Circuit.
November 17, 1969.
Rehearing Denied December 22, 1969.
Writ Refused February 6, 1970.
*170 Iddo Pittman, of Pittman & Matheny, Hammond, for defendant-appellant.
Francis W. Watts, of Watts & Watts, Franklinton, for plaintiff-appellee.
John N. Gallaspy, Bogalusa, for appellee-defendant.
Before LOTTINGER, REID and BLANCHE, JJ.
LOTTINGER, Judge.
This is a death claim filed by the heirs of Henry Y. Crockett who died of injuries sustained from a three vehicle accident. The defendants are United States Fidelity and Guaranty Company, the liability insurer of a Dixie Broiler Company truck and Universal Underwriters Insurance Company, the liability insurer of a M. D. Hales Lumber, Inc. truck. The Lower Court awarded judgment in favor of petitioners and against Universal Underwriters Insurance Company and said defendant has appealed. The petitioners have also appealed seeking an increase in quantum.
The suit was originally filed by L. C. Crockett, P. L. Crockett, Bertha Crockett Stafford, Wiley Crockett, Mary Crockett Barber, Delton Crockett, Geneva Crockett O'Bryant, Clyde Crockett, Mildred Crockett, and Hester Crockett Knight, as the sole *171 and only heirs of their late father, Henry Y. Crockett. The above petitioners also filed suit as the heirs of Jessie Crockett who died subsequent to the death of his father but before the suit. Subsequent to the filing of the suit, P. L. Crockett died and the above named plaintiffs, along with the surviving wife of P. L. Crockett were substituted as plaintiffs. The suit alleges that Henry Y. Crockett was killed on December 22, 1966, as a result of an automobile collision involving Henry Y. Crockett, a 1966 Ford Van belonging to Dixie Broiler Company, driven by Leon Wells, but insured by United States Fidelity and Guaranty Company, and a 1966 Mack's Truck-Tractor and Trailer owned by M. D. Hales Lumber Company, Inc., but operated by Matthew Magee, and insured by Universal Underwriters Insurance Company. The suit was filed as a direct action against United States Fidelity and Guaranty Company and Universal Underwriters Insurance Company. Universal Underwriters filed answer denying liability for the death of Mr. Crockett, alleging that the driver of their insured vehicle, Matthew Magee was guilty of no negligence and further alleging that the accident was a sole result of the negligence on the part of Henry Y. Crockett and Leon Wells, the driver of the Dixie truck. In the alternative, Universal Underwriters alleged that Crockett was guilty of contributory negligence barring his recovery herein and also that he had the last clear chance to avoid the accident. The Universal Underwriters Insurance Company further filed a reconventional demand against petitioners as the heirs of Crockett to recover the sum of $1,728.66 paid by it to repair the M. D. Hales Lumber Company truck under its collision policy, and the additional sum of $1,000.00 paid by M. D. Hales Lumber Company to which Universal Underwriters was subrogated.
The petitioners filed answer to this reconventional demand and also filed a third party demand against United States Fidelity and Guaranty Company for a recovery of the amounts sued for by Universal Underwriters in the event it would determine that the petitioners were in any way liable to Universal Underwriters in damages to Hales Lumber Company.
United States Fidelity and Guaranty Company filed an answer denying any liability on the part of the driver of the insured vehicle, Leon Wells, and, in the alternative, pleaded contributory negligence and assumption of risks on the part of Crockett. They further filed answer to the third party demand filed by petitioners, and in the alternative alleged negligence on the part of decedent and the driver of the lumber truck. United States Fidelity and Guaranty Company and the Dixie Broiler Company filed a petition of intervention against Universal Underwriters for the amount of damages to the poultry truck as a result of the above described accident.
After trial on the merits, the Lower Court found that the sole proximate cause of the accident in question was the negligence of the driver of the lumber truck and rendered judgment in favor of the plaintiffs, L. C. Crockett, Bertha Crockett Stafford, Wiley Crockett, Mary Crockett Barber, Delton Crockett, Geneva Crockett O'Bryant, Clyde Crockett, Mildred Crockett, and Hester Crockett Knight in the sum of $5,000.00 each, and in favor of the above petitioners, as heirs of Jessie Crockett, deceased, in the sum of $5,000.00, and further in favor of the above named petitioners in the sum of $5,000.00, as the heirs of P. L. Crockett, deceased, and also rendered judgment in favor of United States Fidelity and Guaranty Company and against Universal Underwriters in the amount of $250.35, upon their subrogation claim, and further in favor of J. M. Poultry Packing Company and against Universal Underwriters in the sum of $100.00, being the sum of their deductible on the collision policy.
As stated above, the defendant, Universal Underwriters has filed a suspensive appeal, and the petitioners have filed a devolutive appeal seeking an increase in quantum.
*172 The Lower Court correctly held the facts of this unfortunate accident to be as follows:
"The evidence shows that the accident which resulted in damages herein sued for occurred on Louisiana Highway Number 10 in Washington Parish, Louisiana on December 22, 1966 at approximately 8:30 a. m. Henry Y. Crockett had been proceeding in an Easterly direction on the afore-named highway which is commonly known as the Bogalusa-Franklinton Highway. Mr. Crockett had reached a point approximately 9 miles East of the City Limits of the Town of Franklinton, approximately 150 feet west of the intersection of Louisiana State Highway Number 439 with Louisiana State Highway Number 10. Louisiana State Highway Number 439 intersects Louisiana State Highway 10 from the south.
At the point above described, Henry Y. Crockett brought his vehicle to a stopped position in the east bound lane of Louisiana State Highway 10. At this point Louisiana State Highway 10 is a two-laned concrete highway approximately 18 feet in width with an improved shoulder wide enough to facilitate the parking of a motor vehicle.
The testimony is clear and consistent to the effect that on the date and at the time of the occurrence of the accident, there was an extremely heavy fog which began at a point approximately 4 miles West of the place where the accident occurred and extended for some distance to the East thereof. There is no question that the density of the fog extremely limited visibility.
Leon Wells, driving the Ford Van Truck belonging to Dixie Broiler Company was likewise proceeding in an Easterly direction on Louisiana State Highway Number 10 having left Franklinton going to Bogalusa, Louisiana. He entered the fog bank, slowed his vehicle accordingly, and upon approaching the point where the Crockett vehicle was parked in the highway, he observed that vehicle, brought his truck under control, and pulled to a stop approximately 3 or 4 feet behind the Crockett car. The Crockett vehicle was a 1962 Ford Falcon which was dark red in color. The Dixie Broiler Truck was a van-type truck with a silver colored body approximately 10 or 12 feet long and 7½ feet wide. There were 9 red lights located on the rear of the body which were all in working order at the time of the accident.
When Leon Wells pulled his truck to a stop behind the Crockett vehicle, Mr. Crockett got out of the Ford Falcon on the driver's side and started walking back to the Wells truck. When he reached a point approximately at the front fender of the Wells truck, Leon Wells heard the truck driven by Massey Magee approaching from the East.
The testimony shows that Massey Magee was proceeding in the M. D. Hales Lumber, Inc. truck in an easterly direction on the Bogalusa-Franklinton Highway. The testimony further shows that he approached the point where the Crockett automobile and the Wells truck were stopped at a speed of approximately 25 mph. The truck which Magee was driving was a 1966 truck with a tractor, and semi-trailer was approximately 50 to 55 feet. The truck was loaded with sawdust. The load of sawdust itself weighed 51,000 pounds.
As Leon Wells was seated inside the truck he was driving and Mr. Crockett was walking to the front of his truck Wells, upon hearing the Magee truck approaching from the rear, realized that the truck was apparently not going to stop and he exited himself from the truck and ran to the north shoulder of the highway. At about the time he reached the north shoulder of the highway, the truck driven by Massey Magee struck the rear of the truck driven by Leon Wells which in turn struck the rear of the Crockett vehicle knocking it some 200 feet in a westerly direction until it finally *173 came to a stop on the north side of the highway in the ditch.
Mr. Crockett was knocked to the pavement in front of the Wells truck so that his body came to rest in front of the Wells truck in a north-south direction with head about 4 inches from the tire underneath the bumper. As a result of the blow, Mr. Crockett suffered acute cranio cerebral injuries along with a compound fracture of the left femur from which he died at approximately 12:01 p. m. on the date of the accident. The evidence shows that at the time of the death, Mr. Crockett was 86 years of age."
We do not believe there is any question but that the Lower Court found correctly in holding the driver of the lumber truck guilty of negligence. There is no dispute that Magee was driving a huge tractor, semi-trailer, which had fifteen gears and was loaded with 51,000 pounds of sawdust at a speed of at least twenty-five miles per hour just prior to the impact.
The jurisprudence is now well settled in this State that a motorist is held to an unusually high degree of care in adverse atmospheric conditions and his duty to keep his vehicle under control increases in periods of low visibility. In Hernandez v. State Farm Mutual Automobile Insurance Company, La.App., 192 So.2d 679, the Court held that a motorist traveling at a speed of only twenty-five to thirty miles per hour on a foggy night was contributorily negligent and stated the prevailing rule in Louisiana, as follows:
"The jurisprudence of this state is firmly established to the effect that when visibility is materially impaired because of smoke, mist, dust, fog or other atmospheric conditions, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent, and keep his car under such control as to reduce to a minimum the possibility of accident from collision. And, as an extreme measure of safety, it is his duty when visibility ahead is not possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So.2d 148; Demerest v. Travelers Insurance Co., 234 La. 1048, 102 So.2d 451; Ardoin v. Southern Farm Bureau Casualty Ins. Co., 133 So.2d 129 (La.App.3d Cir. 1961); and Moses v. Mosley, 146 So.2d 263 (La. App.3d Cir. 1962)."
There can be no doubt that the driver of the Hales Lumber Company truck was negligent for several reasons in addition to the presumption that a following vehicle is presumed to be negligent in a rear end collision. Calvert Fire Ins. Co. v. Barlow, La.App., 215 So.2d 392. First it must be noted that the Dixie Broiler truck was able to and did in fact stop in time to avoid a collision with Mr. Crockett's car. The driver of this truck did see the Crockett car in time to come to a complete stop some three or four feet to the rear thereof. The rear of the Dixie truck was well lighted with nine red lights as found by the Lower Court. It appears, therefore, that the large poultry truck with these lights shining should have been more clearly visible in the fog than the Crockett Falcon sedan with only its tail lights burning.
If the Dixie truck was able to stop, there is no reason why the Hales Lumber truck could not have stopped unless it was for the fact that the driver was either not keeping a proper lookout or he was going at an excessive rate of speed under the circumstances. Upon being questioned as to the accident, the driver of the Hales truck, by his own admission indicates he was not maintaining a proper lookout when his excuse for not avoiding the collision was *174 "I did not spy it in time". We feel that the Lower Court did not err in holding that the driver was going at an excessive rate of speed under the circumstances.
Of course Universal Underwriters, the insurer of the lumber truck, as well as petitioners themselves claim that the driver of the Dixie truck was negligent in stopping his vehicle on the traveled portion of the highway to the rear of the Ford Falcon. Now, in claiming such negligence upon the part of Mr. Wells, they cite Louisiana Revised Statutes, Title 32, Section 141, subd. A, which provides as follows:
"Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway."
We do not find any negligence on the part of Mr. Wells for stopping. Upon seeing the stopped Crockett vehicle in the highway it was only natural for him to bring his vehicle to a stop, or to at least avoid striking it. The natural thing to do was to stop to render assistance.
After bringing his truck to a stop he had no time to do anything else until he heard the approaching lumber truck. If R.S. 32:141, subd. A indicts Mr. Wells, as is claimed by Universal Underwriters, then Section B of said act exonerates him, as it reads:
"The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic."
Neither did Mr. Wells have time to flag approaching traffic as required by paragraph B, nor did he have time to display appropriate signal lights as provided by subsection C of the act.
In Finley v. Guidroz, La.App., 58 So.2d 271, we stated:
"The Court finds from the evidence that while the truck did stop on the paved slab without leaving a fifteen feet clearance, that it was a momentary stop; that the truck had clearance and tail lights burning; that the stopping of the truck did not make it impossible for traffic approaching from the rear to see it because of its color and composition and that the driver of the truck did not have time to warn the deceased."
Again, in King v. Vico Insurance Company of St. Louis, 182 So.2d 135, the Court held:
"Here and elsewhere there is abundant authority to the effect that it is not actionable negligence to bring a car to a sudden stop in an emergency not created by the driver where there is an occurrence which may cause serious accident and where the reaction of the driver must take place before there is time to consider the possible result of the sudden stop, and where the driver does what any ordinarily careful driver would have done and does not increase the peril by acting in an abnormal way."
It is therefore the opinion of this Court that the Lower Court did not err in exonerating Mr. Wells from any negligence which was the proximate cause for the unfortunate accident.
With regard to the negligence, if any, of the deceased, Henry Crockett, the *175 preponderance of the evidence indicates that his automobile became disabled during his course of travel. His car was brought to a stop in his right-hand lane of traffic just shortly prior to the appearance of the Dixie truck on the scene, as the driver of this truck testified that as he stopped Mr. Crockett was still in his car but then got out of his car and started to approach the truck apparently for the reason of asking assistance.
The evidence indicates that Mr. Crockett's automobile was stranded on the highway because of an apparent mechanical failure. There is no evidence to the contrary. Mr. Hilton Barber testified that Mr. Crockett was at his home the day before the accident and that at that particular time there was no trouble with Mr. Crockett's automobile. Following the accident, Mr. Davis, a mechanic, was called to inspect Mr. Crockett's vehicle and he testified at the trial that when the automobile was cold, that the motor would have fair compression but that when the motor began to heat up, it would lose compression and water could be found in the cylinders. This malady was attributed to a blown gasket or a cracked cylinder head. Such a defect would cause an automobile to cease running. There is no evidence to the contrary that such mechanical defect was not actually experienced by Mr. Crockett immediately preceding the accident. On the facts it is logical to conclude that Mr. Crockett had immediately preceding the arrival of the Dixie truck experienced this difficulty, stopped, and upon the truck's arrival got out of his car to advise the truck driver of the circumstances and to solicit his aid in removing his disabled car from the highway. It is also reasonable to conclude, as did the Trial Judge, that it was reasonable for the deceased to continue traveling in order to avoid the risk of leaving the road particularly in view of the wet weather conditions. In McCook v. Rebecca-Fabacher, La.App., 10 So.2d 512, 515, the Court held that the action of a truck driver was reasonable in continuing to drive for several hundred yards after his truck began to sputter because he thought the trouble was caused by rainfall and would probably clear up. In Eubanks v. Wilson, La.App., 162 So.2d 842, the petitioner's truck experienced mechancial difficulty and stopped on a black top highway which had shoulders of about four feet on each side of the slab. It was dark at the time. The petitioner got out of his truck and opened his hood in an attempt to find the source of the trouble but before he could do so his truck was struck from the rear by the oncoming vehicle of the defendant causing the injuries complained of. Under those circumstances which are very similar to the ones before us, the Court held plaintiff free from contributory negligence because of the very short period of time which elapsed between the stalling of the car and the accident.
As there were no witnesses to the impact of the truck with the decedent, nor as to exactly what happened to decedent after Mr. Wells ran across the highway to warn traffic, the defendants herein take the unique position that there are three possibilities as to the manner in which Mr. Crockett was injured, and that the petitioners have not proven by a preponderance of the evidence that the instrumentality causing the death was the lumber truck striking the poultry truck and shoving it against deceased.
The defendants contend that first of all, it is possible that Crockett could have stopped his vehicle in the eastbound lane, gotten out of his vehicle and attempted to wave traffic behind him when he and his vehicle were struck by the Dixie truck prior to the approach of the lumber truck. Thus they claim the injuries to deceased could have occurred prior to the collision involving the lumber truck with the poultry truck. The second possibility assumes that Wells was telling the truth and that he stopped his vehicle from three to four feet behind the Crockett car, that Mr. Crockett got out of his vehicle and started walking toward him along the center line of the highway *176 in a westerly direction and that he was struck by an approaching yellow car traveling in the opposite direction either as he was standing behind the poultry truck or possibly as he attempted to run across the highway after Mr. Wells. Of course the last possibility is that the accident happened as the plaintiffs claim.
Of course the first contention by the said defendant is directly contrary to the testimony of the driver of the poultry truck who stated that he did not strike the decedent but came to a stop some three to four feet behind his vehicle and that the decedent then got out of his car and walked toward the poultry truck when the driver heard the oncoming truck coming. There is not one iota of evidence in the record to contradict this testimony by the poultry truck driver.
Again there is not one iota of evidence in the record to show that Crockett was struck by a yellow car. In fact all the circumstantial evidence indicates that he must have been struck by the poultry truck after it had been struck by the lumber truck because prior to the accident he was standing directly in front of the poultry truck, and following the accident he was lying underneath the front bumper of the poultry truck.
Under the circumstances, the evidence certainly propounderates to the effect that the decedent received his injuries as a result of the lumber truck striking the poultry truck and shoving the poultry truck into him, possibly pinning him between the poultry truck and his own stalled Ford Falcon.
Decedent was 86½ years of age at the time of his death. He was in good health and had been a police officer for many years. He liked to hunt and fish and often visited with his children. Neither was he dependent upon his children, nor were they dependent upon him.
Petitioners cite Parker v. Smith, La.App., 147 So.2d 414, in which the Court allowed $7,500.00 to a 40 year old married man for the loss of his mother. They claim that a similar award would be appropriate here. On the other hand, defendant claims that at the time of death, decedent was 86½ years of age and would have a life expectancy of less than 8.48 years. Actually, considering his age at death, according to the American Experience Table of Mortality he had a life expectancy of 3.805 years.
However, in making its award the Lower Court was bound by neither the decision of the Parker case nor the life expectancy of the decedent. The Court was only bound to perform the impossible task of attempting to repay the children in money for the tragic loss of life of their beloved father who was apparently in good health, active, who often, every 10 days or two weeks, visited and at times ate meals and remained overnight with his children, and who only a week and a half before his death had been hunting with one of his sons and a grandson. We do not feel the Lower Court to have been wrong in allowing the sum of $5,000.00 for each child.
The Lower Court was correct in not allowing damages to the surviving wife of P. L. Crockett for the death of her father-in-law as any damages recoverable by her late husband for the death of his father would have been his separate property.
For the reasons hereinabove assigned the judgment of the Lower Court is affirmed, all costs of this appeal to be paid by defendant, Universal Underwriters Insurance Company.
Judgment affirmed.