616 So.2d 1311 (1993)
Johnny STAPLETON and Judy Stapleton, Plaintiffs,
v.
GREAT LAKES CHEMICAL CORPORATION, Max Henderson, Old Republic Insurance Company, Louisiana Indemnity Company, Christina Renae Brown and Allstate Insurance Company, Defendants.
No. 24386-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
Rehearings Denied April 29, 1993.
*1314 C. Daniel Street, Monroe, for plaintiffs-appellants-appellees Johnny & Judy Stapleton.
Stone, Pigman, Walther, Wittman & Hutchinson by Esmond Phelps, II, Dane S. Ciolino, New Orleans, Smith & Shadoin by Robert E. Shadoin, Fred W. Jones, Jr., Ruston, for defendants-appellants-appellees Great Lakes Chemical Corp., Max Henderson and Old Republic Ins. Co.
Crawford & Anzelmo by Donald J. Anzelmo, Lisa Rogers Trammell, Monroe, for defendants-appellees Christina Renae Brown and Louisiana Indem. Co.
Walter C. Dunn, Jr., Monroe, for defendant-appellee Allstate Ins. Co.
Theus, Grisham, Davis & Leigh by Phillip D. Myers, Monroe, for intervenor-appellant-appellee Travelers Ins. Co.
Before SEXTON, NORRIS and VICTORY, JJ.
SEXTON, Judge.
Various parties appeal the inconsistent verdicts of the jury and the trial court following a bifurcated trial. The jury rejected the plaintiffs' principal demand for personal injury damages following a vehicular accident, finding no negligence on the part of any of the defendants. The worker's compensation carrier for plaintiff's employer filed an intervention in these proceedings. In the worker's compensation intervention, the trial court found one of the defendants to have been 50 percent at fault and the plaintiff to have been 50 percent at fault and rendered judgment in favor of the intervenor accordingly. We affirm the judgment on the jury verdict, but reverse the judgment of the trial court on the intervention.
This lawsuit arises out of a January 9, 1988, accident involving two tractor-trailer rigs on Highway 167 near Dubach, Louisiana. The accident occurred near midnight. A winter storm had occurred four days previously, the temperature was below freezing, and road conditions were icy. At the site of the accident, Highway 167 is a three-lane highway, two lanes for southbound traffic and one lane for northbound traffic. The portion of the highway at issue is a straight section framed by two curves, with over 1,000 feet of highway *1315 between the curves. Although the ice was described as "patchy," it was thick and solid at the accident site.
Shortly before the instant accident, an automobile owned by Randy Rivet and operated by Sheldon Cooper, northbound on Highway 167, went out of control on the ice and came to rest in the ditch on the northbound side of the highway. Besides Rivet and Cooper, this vehicle was also occupied by Shannon Durbin and Stephanie Reynolds. Ms. Reynolds began walking north, towards Dubach. Cooper flagged down a northbound motorist, Christina Brown, who slowed and began to stop her pickup truck in the northbound lane. There is differing testimony as to whether Ms. Brown had actually stopped before the following events occurred.
Meanwhile, the plaintiff, Johnny Stapleton, a truck driver for Martin Gas Company, was approaching the scene in the inside southbound lane. Stapleton's 18-wheeler was loaded with 9500 gallons of propane. Coming out of the south curve and approaching the scene in the northbound lane was a second 18-wheeler, owned by Great Lakes Chemical Corporation and operated by its employee, Max Henderson. Henderson's flatbed trailer contained three empty chemical tanks. Henderson was unable to stop his truck before reaching Ms. Brown's pickup truck. Although he avoided the Brown and Rivet vehicles and the pedestrians, Cooper and Rivet, the trailer of Henderson's truck swung into the inside southbound lane where it was struck by the cab of Mr. Stapleton's truck.
Mr. Stapleton suffered rather severe injuries in the accident, sustaining a concussion, two ruptured discs in his neck and two ruptured discs in his lower back, which together have necessitated five surgical procedures. Travelers Insurance Company, the worker's compensation insurer for Martin Gas Company, has paid medical expenses and weekly worker's compensation benefits to Mr. Stapleton, who remains unable to return to work.
The plaintiffs, Johnny and Judy Stapleton (Mrs. Stapleton sought damages for loss of her husband's consortium), filed suit against Max Henderson; his employer, Great Lakes Chemical Corporation; its liability insurer, Old Republic Insurance Company; Christina Brown; and her two automobile liability insurers, Louisiana Indemnity Insurance Company and Allstate Insurance Company. Plaintiffs allege that the accident was caused by the negligence of Max Henderson and/or Christina Brown. Travelers Insurance Company intervened in the lawsuit seeking to recover worker's compensation benefits and medical expenses it had paid to or on behalf of Mr. Stapleton.
A bifurcated trial was held with the jury deciding the plaintiff's principal demand and the trial court deciding matters raised by the intervention. The jury found no negligence on the part of either Mr. Henderson or Ms. Brown and judgment was accordingly rendered rejecting the Stapletons' demand for damages. The trial court issued a written opinion in the intervention proceeding. Citing LSA-R.S. 23:1101 D(1), the trial court noted that the claim for reimbursement of worker's compensation payments was to be tried before a judge only. The trial court found that it was not bound by the factual findings of the jury. The trial court found that Ms. Brown was not at fault and that her actions in stopping to render assistance were reasonable under the circumstances. Mr. Henderson was assessed with 50 percent of the fault based on the trial court's finding that he was driving too fast for the hazardous conditions of the highway. Mr. Stapleton was assessed with the remaining 50 percent of the fault, in that he was negligent for remaining in the inside southbound lane after observing the impending hazards. Judgment was rendered in favor of Travelers Insurance Company against Mr. Henderson, Great Lakes Chemical Corporation, and Old Republic Insurance Company in the sum of $102,713.25 plus 50 percent of all future medical expenses or worker's compensation benefits.
The Stapletons appeal from the judgment rendered on the jury verdict. Travelers Insurance Company, Mr. Henderson, Great Lakes Chemical Corporation, and Old Republic *1316 Insurance Company appeal the trial court judgment on the intervention.

CHALLENGES FOR CAUSE
The Stapletons first argue on appeal that the trial court erred in denying their challenges for cause of four prospective jurors. Although plaintiffs peremptorily challenged all of these prospective jurors, this contributed to the exhaustion of their peremptory challenges. Prospective jurors Rodney Banks and Debbie Abrahm expressed that each was a friend or acquaintance of Robert Shadoin, one of the defense attorneys for Mr. Henderson, et al. Mr. Banks socialized with Mr. Shadoin, essentially at church activities. Ms. Abrahm had known Mr. Shadoin for 15 to 20 years and they sometimes attended the same social functions. Prospective juror Kenneth Garner was challenged for cause as he and his company had been legally represented by Mr. Shadoin's law partner. Prospective juror Angela Futrell was challenged for cause because she used to work as an underwriter on claims for an insurance company and expressed her belief that jury verdicts are excessive. All four challenges for cause were denied when the prospective jurors stated and the trial court determined that the challenged relationships and situations would not affect each juror's consideration and verdict in the case.
LSA-C.C.P. Art. 1765 provides the grounds for a challenge for cause in a civil trial:
Art. 1765. Challenges for cause
A juror may be challenged for cause based upon any of the following:
(1) When the juror lacks a qualification required by law;
(2) When the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial;
(3) When the relations whether by blood, marriage, employment, friendship, or enmity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict;
(4) When the juror served on a previous jury, which tried the same case or one arising out of the same facts;
(5) When the juror refuses to answer a question on the voir dire examination on the ground that his answer might tend to incriminate him.
The statute clearly parallels LSA-C.Cr.P. Art. 797, dealing with the grounds for a challenge for cause in a criminal trial. Accordingly, criminal jurisprudence on challenges for cause may properly be considered in civil cases. Andrews v. Mosley Well Service, 514 So.2d 491 (La.App. 3rd Cir.1987), writ denied, 515 So.2d 807 (La.1987); Bernard v. Richoux, 464 So.2d 856 (La.App. 5th Cir.1985).
A trial court is accorded great discretion in ruling on a challenge for cause and its ruling will not be disturbed on appeal unless review of the voir dire as a whole indicates an abuse of discretion. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); State v. Lott, 574 So.2d 417 (La.App. 2d Cir.1991), writ denied, 580 So.2d 666 (La.1991).
A prospective juror's friendship or acquaintance with one of the attorneys involved in the case does not warrant the granting of a challenge for cause if the prospective juror makes it clear that such a relationship would not affect his or her verdict. State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991); State v. Johnson, 452 So.2d 1302 (La.App. 3rd Cir.1984). Nor does a prospective juror, having previously employed an attorney or his law firm on an unrelated legal matter, by itself, necessitate the granting of a challenge for cause. State v. Lee, 559 So.2d 1310 (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); rehearing denied, ___ U.S. ___, 111 S.Ct. 2068, 114 L.Ed.2d 472 (1991); Savoie v. McCall's Boat Rentals, Inc., 491 So.2d 94 (La.App. 3rd Cir.1986), writs denied, 494 So.2d 334, 542 (La.1986). Finally, in Nichols v. U.S. Rentals, Inc., 556 So.2d 600 (La.App. 5th Cir.1990), writ not considered, 558 So.2d 597 (La.1990), it was held that a prospective juror's employment *1317 as an insurance adjuster did not render him subject to a challenge for cause where the juror stated that his work would not influence him or prevent him from rendering a fair and impartial decision.
All four of the challenged jurors indicated that their position or relationship would not affect their impartiality or the verdict they might render. Mr. Banks stated that his friendship with Mr. Shadoin would not cause him to favor Mr. Shadoin's side, nor would he feel any pressure against rendering a large monetary verdict against Mr. Shadoin's clients. Ms. Abrahm testified that her friendship would not affect her judgment. Mr. Garner was positive that his legal relationship with Mr. Shadoin's law partner would not influence or affect him in any way. Finally, Ms. Futrell stated that she would listen to the judge's instructions and try to be fair. If she were to award damages, they would be reasonable, but not excessive damages.
In light of each prospective juror's testimony, we find no error in the denial by the trial court of the four challenges for cause. The trial court carefully considered each challenge and gave detailed reasons, based not only on each prospective juror's statements, but also on his or her demeanor, for the denial of the challenges for cause. We are unable to find an abuse of discretion in the denial of the challenges.

EVIDENTIARY RULING
The Stapletons next argue that the trial court erred in allowing evidence of the defendant Henderson's good driving record, including testimony of letters and awards to Mr. Henderson from the National Safety Council for his 14 years and nearly two million miles of safe driving. This evidence initially arose during plaintiff's examination of Mr. Henderson in an unsolicited response by Henderson to a question regarding the proper method to stop a vehicle on ice. Henderson stated, "My hall at the house is full of plaques with safe driving awards." Plaintiff's counsel told Henderson to only respond to his questions and that Henderson's attorney could "ask you questions like that." Of course, Henderson's counsel sought to elicit this testimony on direct examination. The trial court allowed this testimony as habit evidence and stated that it was limited to that purpose. The trial court immediately read the definition of habit found in LSA-C.E. Art. 406 and informed the jury "... you can consider this only to that extent."
LSA-C.E. Art. 406 provides:
Art. 406. Habit; routine practice; methods of proof
Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. The evidence may consist of testimony in the form of an opinion or evidence of specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.
The issue is whether the evidence of Henderson's good driving record constituted evidence of habit, which is admissible, or whether it constituted character evidence, which is generally inadmissible. LSA-C.E. Art. 404. The difference between character evidence and habit evidence is described in McCormick's Handbook of the Law of Evidence (2d ed. 1972) § 195, at 462-3, as follows:
195. Habit and Custom as Evidence of Conduct on a Particular Occasion.
Character and habit are close akin. Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. "Habit," in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, family life, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of meeting a particular kind of *1318 situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.
[Emphasis added.]
Although not basing its holding on the difference between habit and character evidence, the opinion in Guerra v. W.J. Young Construction Company, 165 So.2d 882 (La.App. 4th Cir.), writ refused, 246 La. 864, 167 So.2d 676 (1964), would also indicate that evidence of a party's good driving record is inadmissible. In Guerra, the plaintiff sought damages for injuries sustained when a detached wheel from defendant's truck struck plaintiff's vehicle. On appeal, the defendant argued that the trial court erred in refusing to allow evidence that the defendant had operated a great number of similar vehicles for years without ever having a wheel become detached. The appellate court agreed with the trial court that such evidence was immaterial.
The evidence of Henderson's safe driving record was clearly character evidence, not habit evidence. Henderson's safe driving history was not evidence of his regular response to a repeated specific situation, but was rather a generalized description of Henderson's general disposition of operating his vehicle in a safe manner. We find, therefore, that the trial court was in error in admitting this evidence as habit evidence.
This does not end our inquiry, however. In determining the effect of this error, it must be determined whether the error caused harm or prejudice to the plaintiffs. In the absence of prejudice, reversal is not warranted. The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case. The party alleging error bears the burden of proving the error was prejudicial to his case. American Manufacturers Mutual Insurance Company v. General Motors Corporation, 582 So.2d 934 (La.App. 2d Cir.1991); Hesser v. Richardson, 579 So.2d 1136 (La.App. 2d Cir.1991).
In the instant case, the erroneously admitted evidence was of a minor nature in comparison to the abundance of properly admissible evidence regarding the circumstances of the accident itself. Further, the trial court specifically instructed the jury that the evidence of defendant's good driving record was only to be considered as habit evidence and the jury's consideration of Henderson's good driving record should be limited to that purpose. Such a limiting instruction by a trial court, combined with ample other admissible evidence upon which a jury could properly base its findings, has been held to cure the prejudicial effect of evidence erroneously admitted. See Meadoux v. Hall, 369 So.2d 240 (La.App. 4th Cir.1979), writ denied, 369 So.2d 1366 (La.1979); Wexler v. Martin, 367 So.2d 111 (La.App. 4th Cir.), writ denied, 369 So.2d 1352 (La.1979). Accordingly, we find that the plaintiffs have failed to show that the evidence of Henderson's good driving record was prejudicial to their case such that reversal is required.

JURY INSTRUCTIONS
The plaintiffs next argue that the trial court erred in failing to give three of their requested jury instructions and further erred in charging the jury with one of defendant Brown's requested instructions.
The trial court is bound to instruct the jury on the law which pertains to the evidence adduced. Burks v. McKean, 559 So.2d 921 (La.App. 2d Cir.1990), writ denied, 566 So.2d 398 (La.1990); Knight v. First Guaranty Bank, 577 So.2d 263 (La.App. 1st Cir.1991), writs denied, 581 So.2d 688, 690 (La.1991). Jury instructions are adequate when they fairly and reasonably point up the issues and provide correct principles of law for the jury to apply to those issues. Walker v. Bankston, 571 So.2d 690 (La.App. 2d Cir.1990); Fuller v. United States Aircraft Insurance Group, 530 So.2d 1282 (La.App. 2d Cir.1988), writ denied, 534 So.2d 444 (La.1988), cert. denied, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989). The trial court is not *1319 required to give precise instructions submitted by the parties; it need only give instructions that properly reflect the applicable law and adequately convey the issues to the jury. Burks v. McKean, supra; Fuller v. United States Aircraft Insurance Group, supra. The adequacy of jury instructions must be determined in the light of the jury instructions as a whole. Walker v. Bankston, supra; Cannatella v. Camp, Dresser & McKee, Inc., 574 So.2d 407 (La.App. 5th Cir.), writs denied, 575 So.2d 824, 825 (La.1991).
Plaintiffs requested a jury instruction that "... when a collision occurs between two vehicles, one of which is in the wrong lane of travel, there is a presumption that the driver in the wrong lane is negligent and the burden is on him to exculpate himself from any fault, however slight, contributing to the accident." The trial court gave a modified version of the requested charge, omitting the "however slight" language, but which required the driver in the wrong lane of travel to show himself "free of fault."
We find no error in the jury charge as amended. To prove himself free of fault, a driver in the wrong lane of travel must necessarily prove that he committed no fault, negating the existence of even slight fault. Further, this charge must be considered in light of the entire jury charge. The jury was additionally charged regarding the expectations and duties of a motorist in his proper lane of travel, that such a motorist can assume an approaching motorist will control his vehicle, that he is not required to anticipate that an approaching driver will turn suddenly into his path, and that he may assume an approaching motorist in the wrong lane of travel will return to its proper lane. We find that the jury was properly charged that it was Henderson's burden to absolve himself of any fault in this accident.
Next, plaintiffs requested that the jury be charged that a motorist operating on an icy or wet, slick highway is obligated to operate his vehicle at such speed and in such a manner as to maintain control of it. The trial court denied this charge as covered by the charge that a motorist has a higher standard of care in adverse weather conditions and his duty to keep his vehicle under control increases.
Clearly, the trial court's charge regarding inclement weather conditions included the situation of an icy or wet, slick highway. If anything, the trial court's charge was more beneficial to plaintiffs in that it specifically implied that Henderson's duty to maintain control of his vehicle was increased because of the weather conditions. No error was committed by the trial court.
Plaintiffs additionally requested that the jury be charged that a motorist who parks on the travel portion of a highway is prima facie deemed in violation of LSA-R.S. 32:141 and to avoid liability for any damages resulting therefrom, such motorist bears the burden of establishing the necessity for having so parked. The trial court denied this charge, finding it was covered elsewhere by the reading of LSA-R.S. 32:141.
We find that the reading of the statute properly presented the applicable issues to the jury. Considering LSA-R.S. 32:141, regarding stopping a vehicle on a highway, together with the instructions regarding the rescuer doctrine, the jury could properly decide whether there was a sufficient necessity for Ms. Brown's having stopped her vehicle, such that her violation of LSA-R.S. 32:141 was excused. We find no reversible error in the trial court's failure to give the requested instruction.
Finally, plaintiffs argue that the trial court erred in giving a jury charge requested by defendant Brown regarding the rescuer doctrine. Citing Bangs v. Government Employees Insurance Company, 387 So.2d 1323 (La.App. 1st Cir.1980), plaintiffs argue that there was no obvious peril, danger or emergency which would justify the jury being charged with the rescuer doctrine. In Bangs, the plaintiff had been called by a friend who had run out of gas on a highway. The plaintiff brought gasoline and left his car with its tail lights burning, although dimly, behind the stalled vehicle on the highway. While plaintiff *1320 was filling the stalled vehicle, plaintiff's car was struck by defendant's vehicle. Under the facts presented, the rescuer doctrine was found inapplicable and plaintiff's own negligence precluded his recovery. The instant case clearly differs from Bangs in that here there was a factual question as to whether Ms. Brown was acting on a sudden impulse in coming to the aid of persons she thought were in immediate danger or peril. There was sufficient evidence on the question that the jury should have been charged on this issue.
We find that, considering the jury instructions as a whole, the jury was properly charged regarding the applicable issues with instructions which properly reflected the applicable law. No error was committed in denying plaintiff's requested instructions or in giving the instruction requested by defendant Brown. This assignment of error is without merit.

WORKER'S COMPENSATION INTERVENTION
As noted, the jury and the trial court rendered inconsistent verdicts in this case. The actions of the trial court in the worker's compensation intervention become important not only in reviewing that judgment, but also as a threshold issue in determining the appropriate standard for appellate review. The parties note that the general manifest error standard of review, Rosell v. ESCO, 549 So.2d 840 (La.1989), is inapplicable where a bifurcated trial results in conflicting factual findings. However, the appropriate appellate response is unclear. See American Casualty Company v. Illinois Central Gulf Railroad Company, 601 So.2d 712 (La.App. 5th Cir.1992), writ denied, 604 So.2d 1005 (La.1992) (the appellate court should decide whether the judge's decision or the jury's decision is the more reasonable); McCullough v. Regional Transit Authority, 593 So.2d 731 (La.App. 4th Cir.1992), writ denied, 595 So.2d 655 (La.1992) (the appellate court should make its own independent review of the evidence without according any weight to the factual findings of the judge or jury).
The trial court is obligated to try a worker's compensation intervention. LSA-R.S. 23:1101 D. In the instant case, the trial court interpreted this statute as allowing it to disregard the factual findings regarding liability made by the jury. The trial court's interpretation of LSA-R.S. 23:1101 D of the statute fails to give sufficient dignity to a previous subsection of the statute. LSA-R.S. 23:1101 B provides:
B. Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person and, where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage.
[Emphasis added.]
The rights of an employer to recover compensation benefits paid to an injured employee are contingent upon the employee's right to recover from the third party tortfeasor. Bell v. Carolina Casualty Insurance Company, 227 So.2d 171 (La.App. 2d Cir.1969), writ refused, 255 La. 151, 229 So.2d 733 (1970); Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir.1987), writs denied, 508 So.2d 71, 74 (La.1987).
Contrary to the trial court's holding, there is only one cause of action involved. See Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983); Allstate Insurance Company v. Theriot, 376 So.2d 950 (La.1979). The trial court's belief that the tort action and the intervention represent separate causes of action is based on an erroneous interpretation of Scott v. Barclay's American Leasing Service, Inc., 506 So.2d 823 (La.App. 1st Cir.1987), writ denied, 508 So.2d 88 (La.1987); and Thomas v. Matthews Lumber Company of Mansfield, 253 *1321 La. 1, 215 So.2d 832 (1968). In each case, it was held that the employer/worker's compensation insurer, was entitled to reimbursement for worker's compensation payments made to the dependents of the deceased employees notwithstanding that the dependents themselves could not have maintained a tort case against the tortfeasors. Although the dependents were entitled to worker's compensation benefits through the death of the employees, these parties, the decedent's illegitimate children in Thomas and the decedent's live-in girlfriend's children by other men in Scott, were not beneficiaries entitled to maintain a tort action pursuant to LSA-C.C. Art. 2315 as it was then interpreted. The distinction stems from each party's right to bring the cause of action and not, as the trial court in the instant case found, that two causes of action existed. The distinction between the single cause of action and the differing right to bring that cause of action is discussed in Board of Commissioners of Port of New Orleans v. City of New Orleans, 223 La. 199, 65 So.2d 313 (1953), the case predominately relied on in both Scott and Thomas.
LSA-R.S. 23:1101 D does not allow a trial court to determine issues relative to the underlying tort cause of action, but simply allows the trial court to determine issues specific to a worker's compensation proceeding, i.e., the existence of an employment relationship, whether plaintiff was in the course and scope of his employment, etc. When the jury decided the liability question against the plaintiffs, the trial court should have ended its inquiry in the intervention proceedings.
The trial court's decision as to liability and the assessment of fault should not have been made and is thus purely dicta. Accordingly, a different circumstance exists here as opposed to the situation where factual conclusions by both the judge and jury are necessary. Under this situation, the trial court opinion was gratuitous and is not entitled to parity with the jury's required decision. As the trial court's decision and its factual determinations were of no effect, the jury's factual determinations are thus to be reviewed under the general manifest error standard. Smiley v. Sikes, 543 So.2d 1084, 1087, n. 1 (La.App. 2d Cir.1989), writ denied, 548 So.2d 326 (La.1989); Rogers v. Calcasieu Parish Police Jury, 487 So.2d 190 (La.App. 3rd Cir.1986), writ denied, 489 So.2d 924 (La.1986).

MS. BROWN'S LIABILITY
Plaintiffs allege that the jury erred in failing to find any negligence on the part of Ms. Brown which contributed to the accident. Ms. Brown's negligence, it is alleged, stems from her violation of LSA-R.S. 32:141, which provides:
§ 141. Stopping, standing or parking outside business or residence districts
A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
A motorist who stops or parks on the travel portion of the highway is prima facie deemed in violation of LSA-R.S. 32:141 and to avoid liability for damages resulting therefrom, she bears the burden of establishing the necessity for having so stopped or parked. Deumite v. West Bank Contractors, 343 So.2d 289 (La.App. 1st Cir.1977); Warren v. Hunter Truck Lines, Inc., 289 So.2d 257 (La.App. 1st Cir.1973), writ denied, 290 So.2d 910 (La.1974).
There is some dispute as to whether Ms. Brown had actually come to a stop on the highway at the time of the accident. Ms. Brown and her passenger, Catherine Ernst Weimer, testified that her vehicle had not yet come to a complete stop. Mr. Rivet and Mr. Cooper, who had flagged down Ms. Brown, stated that she had come to a stop. *1322 In either event, Ms. Brown had just stopped or was just about to stop when the accident occurred. Mr. Henderson said that when he came out of the curve and first saw Ms. Brown, he thought she was stopped. From the viewpoint of a following motorist and for all practical purposes, Ms. Brown was stopped on the highway.
Nevertheless, in all other respects, Ms. Brown complied with the statute. Ms. Brown, Mr. Cooper, and Mr. Rivet all testified that it was impracticable for Ms. Brown to get completely off the highway. The shoulder was icy and sloped down into a ditch. It is uncontradicted that if Ms. Brown had attempted to pull onto the shoulder, she would likely have joined the Rivet vehicle in the ditch. Ms. Brown also left the two southbound lanes of traffic unobstructed for the passage of other vehicles. From the testimony of the plaintiff and Mr. Henderson, she also left a distance of at least 200 feet in each direction with a clear view of her vehicle. Her lights were operating, and although she did not activate her emergency flashers, Mr. Henderson testified that he saw her vehicle and knew it was stopped immediately upon coming out of the curve, a distance he estimated as 600 feet. Any defect in failing to activate her emergency flashers, which would have been designed to more probably ensure that other vehicles knew she was stopped, was of no effect here since Mr. Henderson knew she had stopped even without the flashers.
Ms. Brown's stopping on the highway was occasioned by Mr. Cooper and Mr. Rivet flagging her down. There is some dispute as to whether Ms. Brown's actions entitled her to rescuer status. A rescuer is looked on with favor in the eyes of the law and is not chargeable with negligence merely because she failed to make the wisest choice to accomplish her purpose. Chastain v. Allstate Insurance Company, 212 So.2d 243 (La.App. 2d Cir.1968); Lynch v. Fisher, 41 So.2d 692 (La.App. 2d Cir.1949). The cited cases deal with a "rescuer" coming upon an accident scene where injuries were involved. However, the rescuer doctrine has been held not to apply in situations where the elements of emergency, immediacy, and danger are lacking such as where the purported rescuer is rendering assistance to a stranded motorist. Bangs v. Government Employees Insurance Company, supra; Dodge v. Pierre, 348 So.2d 167 (La.App. 3rd Cir.1977), writ denied, 351 So.2d 165 (La.1977).
In the instant case, the actual situation would appear more akin to the stranded motorist/non-rescuer than the accident with injuries/rescuer cases. Nevertheless, there is no evidence that Ms. Brown immediately recognized the true nature of the situation. She was confronted with a vehicle in a ditch and being flagged down on a cold, icy night. The scenario described could have constituted an accident requiring her emergency response. Even assuming this was not the true rescuer situation, we are unable to say that Ms. Brown was unreasonable in her actions in stopping to determine the exact nature of the situation. She checked traffic both in front of and behind her prior to stopping, she left a significant distance of sight in each direction, and allowed two unobstructed lanes for passage. The jury found her actions to have been reasonable under the circumstances, a factual determination that is not clearly wrong.

MR. HENDERSON'S LIABILITY
The evidence clearly shows that the accident occurred in Mr. Stapleton's lane of travel. When a collision occurs between two vehicles, one of which is in the wrong lane of travel and the other in its correct lane of travel, the driver in the wrong lane is presumed at fault and is required to exculpate himself from any fault, however slight, contributing to the accident. King v. Louviere, 543 So.2d 1327 (La.1989); Smiciklas v. Groendyke Transport, Inc., 505 So.2d 775 (La.App.2d Cir.), writ denied, 506 So.2d 1231 (La.1987). Accordingly, Mr. Henderson is presumed to have been at fault in this accident, and it was his duty to exculpate himself from that presumption of fault.
We additionally note that a motorist is held to a higher degree of care in *1323 adverse weather conditions and his duty to handle his vehicle in such a manner and at such a speed as to maintain control of it increases. Chastain v. Allstate Insurance Company, supra; Crockett v. United States Fidelity & Guaranty Company, 229 So.2d 169 (La.App. 1st Cir.1969), writ refused, 255 La. 286, 230 So.2d 589 (1970).
Notwithstanding the presumption that Mr. Henderson was at fault in the accident due to its occurrence in Mr. Stapleton's lane of travel, together with Mr. Henderson's heightened duty to maintain control of his vehicle in adverse weather conditions, the jury nevertheless absolved Mr. Henderson from all liability in this accident. The difficult question presented on appeal is whether the jury was clearly wrong in this factual determination.
Mr. Henderson was northbound at the time of the accident. Although the road conditions had been deteriorating the farther north he got, until the scene of the accident, the ice was only patchy. Coming out of the southern curve into the accident scene, Mr. Henderson was faced with a solid sheet of ice on the highway. Christina Brown confirmed that the ice became a "solid sheet" coming out of the south curve. In this respect, we note the photographs indicate the curve was virtually free of ice. Sheldon Cooper also had obvious difficulty as he came out of the same curve as the vehicle he was driving ended up in the ditch.
Coming out of this curve onto a solid sheet of ice, a significant change from the patchy ice he had been encountering, Mr. Henderson was faced with an emergency situation, a vehicle stopped in his lane of travel. Mr. Henderson's initial thought was to pass the Brown vehicle to the left using the inside southbound lane, but he found that lane occupied by Mr. Stapleton's vehicle. Although Mr. Henderson testified to the contrary, he may have initially entered plaintiff's lane of travel in a possible attempt to thereby avoid the Brown vehicle; Sheldon Cooper stated that this appeared to be the case. Nevertheless, Mr. Henderson found his lane occupied by the Brown vehicle, the inside southbound lane occupied by the Stapleton vehicle, the Rivet vehicle in the ditch, and the persons from the Rivet vehicle apparently on the northbound shoulder between the Brown and Rivet vehicles.
Although Mr. Stapleton has cited the following law as applicable to his situation, it appears equally as applicable to that faced by Mr. Henderson. If a motorist finds himself in a position of peril not of his own making and without sufficient time to consider the best means of avoiding danger, he is not guilty of negligence if he fails to follow what subsequently appears to have been a safer course of conduct. Pourteau v. State Farm Mutual Automobile Insurance Company, 572 So.2d 328 (La.App. 3rd Cir.1990); Nicholas v. Voiron, 568 So.2d 1139 (La.App. 5th Cir.1990). Even assuming Mr. Henderson initially attempted to pass the Brown vehicle on the left, delaying his initial application of the brakes, we conclude that a jury determination that this reaction was a reasonable response to the emergency situation, notwithstanding that in hindsight it may have increased the distance necessary to stop his vehicle, is not clearly wrong.
Upon seeing his perilous situation, Mr. Henderson began sounding his horn and pumping his brakes. The horn caused Mr. Rivet, Mr. Cooper, and Ms. Durbin to dive into the ditch. Ms. Brown may have attempted to move her vehicle forward. The first law enforcement officer on the scene following the accident, Dubach police officer Dennis Owens, testified that Ms. Brown told him that she attempted to move her vehicle when she heard the truck behind her, but it stalled as she put it into gear.
Mr. Henderson's vehicle began sliding on the ice as he hit his brakes. At the time Mr. Henderson was also descending what was repeatedly referred to as a hill. The grade or steepness of the hill varies and is reflected by the survey chart introduced as "Brown-2." Brown-2 does indicate a 20-foot decline in elevation from the curve to the approximate point of impact. The record indicates the jury went to the scene and was able to judge the steepness of the hill on site. Clearly, the distance in which Mr.
*1324 Henderson could stop his vehicle was adversely affected by the ice and the fact that he was going downhill. Further, Mr. Stapleton admitted that an empty trailer such as Mr. Henderson was pulling, is more difficult to stop as it will "skate" around more and be more apt to jackknife. A loaded trailer, like Mr. Stapleton's, has better traction.
We are, however, somewhat at a loss to explain how Mr. Henderson was unable to stop his vehicle at his stated speed, 20 miles per hour. Plaintiff's expert in accident reconstruction, Ray Herd, testified that an 18-wheeler traveling 20 miles per hour will be able to stop on ice in 100 feet. Mr. Henderson testified that he had 200 yards, or 600 feet, in which to stop. This court's independent review of the exhibits and photographs representing the accident scene would seem to indicate that there was approximately 650 feet between the end of the south curve and the point of impact. Proceeding northerly, the curve seems to end at approximately the 1400-foot point on the survey chart, "Brown-2." The relationship of the northbound "BRIDGE MAY ICE IN COLD WEATHER" sign, the telephone poles, and the skid marks reflected on the photographs filed in evidence as H-5 and H-6 indicate the accident occurred at approximately the spot labeled 2050 on Brown-2. Interestingly, the photographs H-7 and Brown-1 seem to indicate that the solid ice does not begin until about the 1700-foot line just before the gravel road shown on Brown-2 at approximately the 1750-foot line. Mr. Herd, using the same photographs, found 1000 feet from the curve to impact and thereby estimated that Mr. Henderson was traveling 40 to 50 miles per hour when he came out of the curve.
Mr. Herd also estimated Mr. Henderson's speed at 20 miles an hour at the time of impact. The fact that Mr. Henderson was able to stop and not strike either the Brown or Rivet vehicles calls this opinion of Mr. Herd into question. Nevertheless, even assuming a speed of 40 to 50 miles per hour exiting the curve, a jury conclusion that Mr. Henderson's speed was reasonable under the circumstances is not clearly wrong. We note that Mr. Stapleton's speed was estimated at a similar 40 to 45 miles per hour shortly before the accident by Officer Owens who followed plaintiff's vehicle for a short distance. Officer Owens noted that he considered this a safe speed. It was clearly within the posted speed limit of 55 miles per hour. Mr. Henderson's speed did not affect his ability to traverse the curve nor apparently had it caused him any problems through the earlier areas of patchy ice. It only became a problem when the combined difficulties of a solid sheet of ice, together with the obstruction presented by the Brown vehicle stopped in his only available lane of traffic presented themselves. Still, Mr. Henderson almost completely avoided this accident, bringing the cab of his vehicle to rest between the Brown and Rivet vehicles, although his trailer did swing out and strike the cab of plaintiff's vehicle. The jury obviously found that Mr. Henderson had exculpated himself from the presumption of fault in this accident, a finding not clearly wrong.
Further, the jury finding clearly implies that it found plaintiff to be the only party at fault as a result of his action or, more accurately, inaction. As noted, Mr. Stapleton was in the inside southbound lane. If he had shifted to the outside southbound lane, he would have afforded Mr. Henderson a lane of egress through the area of complication and danger. Mr. Stapleton testified that he stayed in the inside lane because of the ice and his fears of jackknifing or slipping going around the curve. Mr. Stapleton's explanation for remaining in the inside southbound lane apparently did not impress the jury.
We further note the existence of plaintiff's statement of May 31, 1988, less than five months after the accident, and given to Ms. Brown's insurance adjuster. This statement is inconsistent with plaintiff's trial testimony that his injuries affected his memory of the accident. The statement, not long after the accident, gives a more detailed description of plaintiff's cognizance of Mr. Henderson's dilemma. Clearly, *1325 in this statement, the plaintiff indicated his awareness of Mr. Henderson's impending peril and essentially exonerated Henderson from fault. Plaintiff's statement indicated his full awareness of the entire situation, the ice, Ms. Brown's vehicle stopped in Henderson's lane of travel, and that Henderson was unaware of the entire situation and would be unable to stop. Nevertheless, plaintiff did not slow down nor did he change lanes. The statement likely played an important part in the jury determination and the jury's reliance on this statement was clearly reasonable.
Contrary to plaintiff's argument on appeal, this statement was admissible not only for impeachment purposes, but also as substantive evidence. A party's statement offered by another party is not hearsay. LSA-C.E. Art. 801 D(2). As such, there is no basis to preclude its admissibility as substantive evidence. See State v. Sonnier, 558 So.2d 749 (La.App. 3rd Cir.1990); Malmay v. Sentry Insurance Company, 550 So.2d 366 (La.App. 3rd Cir.1989). The rule that inconsistent statements are admissible only as impeachment evidence and not as substantive evidence, applies only to prior inconsistent statements of a witness. LSA-C.E. Art. 607 D(2); Burford v. First National Bank in Mansfield, 557 So.2d 1147 (La.App. 2d Cir.1990). It has never been applied to prior inconsistent statements by a party. A party's prior inconsistent statements may be admissible for both impeachment and substantive purposes. McCormick's Handbook of the Law of Evidence, supra, § 37, at 74.
In this statement by plaintiff, he acknowledges seeing Mr. Henderson's vehicle coming around the curve and the inherent danger caused by Ms. Brown's vehicle stopped in Mr. Henderson's lane of travel. Mr. Stapleton further stated that he radioed Mr. Henderson in an attempt to warn him of the danger. Basically, the plaintiff's statement was that it was too late for Mr. Henderson to do anything by the time plaintiff radioed to him.
Plaintiff argues that a motorist such as himself, traveling on the right side of the road and in a lawful manner can assume that an approaching motorist will control his vehicle and may assume that an approaching motorist who encroaches on his lane of travel will return to his proper lane. The duty of the motorist on the right side of the road to take precautions only arises when by due care he discovers that the approaching motorist cannot or will not clear his way by returning to his proper lane of travel. Martin v. Firemen's Insurance Company of Newark, New Jersey, 241 La. 1047, 132 So.2d 892 (1961); Patterson v. St. Paul Mercury Insurance Company, 173 So.2d 224 (La.App. 3rd Cir.1965). The statement of May 31, 1988, effectively rebuts plaintiff's right to assume Mr. Henderson would not encroach on his lane of travel. Plaintiff noted the dilemma faced by Mr. Henderson and he radioed him of the danger. Further, he knew Mr. Henderson could not pass the Brown vehicle on the northbound shoulder due to the presence of Mr. Cooper and Mr. Rivet. Clearly, it was unreasonable for plaintiff to assume that Mr. Henderson would not consider entering the plaintiff's lane of travel as his safest method of passing the Brown vehicle. The jury could have reasonably found that plaintiff then had a duty to avoid Mr. Henderson by moving to the outside southbound lane.
In essence, the jury must have determined that the plaintiff failed to prove that anyone other than himself was ultimately responsible for the accident. Clearly, the jury found that if Mr. Stapleton had moved to the outside southbound lane, the accident would not have occurred and that Mr. Stapleton's explanation for not having done so was unpersuasive.[*] While this *1326 court may have assessed fault in a different manner, we are unable to say that the jury was clearly wrong in finding that Mr. Henderson acted reasonably in light of the sudden emergency with which he was faced and did not thereby breach a duty owed to plaintiff.

CONCLUSION
For the above and foregoing reasons, the judgment rendered on the jury verdict is affirmed. The trial court judgment on the worker's compensation intervention is reversed, and it is hereby ordered, adjudged, and decreed that the claims of Traveler's Insurance Company against all defendants are dismissed with prejudice. All costs of this appeal are to be assessed one-half to plaintiffs and one-half to the intervenor.
JURY VERDICT AFFIRMED.
NORRIS, Judge, concurring in part and dissenting in part.
I concur with the majority that the trial court did not err in denying plaintiffs' challenges for cause of four prospective jurors and in denying three of plaintiffs' requested jury charges. I likewise concur in the majority's treatment of the trial of the intervention and in its conclusion that the jury was not clearly wrong in absolving Mrs. Brown from fault in causing the accident in question. I further agree with the majority that the trial court erred in admitting proof of Henderson's safe driving record as permissible habit evidence.
I strongly disagree, however, with the majority's conclusion that the wrongly admitted evidence was not prejudicial to plaintiffs' case. The issue of Henderson's negligence in operating his vehicle was of paramount importance in the case. The erroneously admitted evidence that it was his habit to drive a truck carefully struck at the heart of this issue and tainted the jury's verdict, rendering it unreliable.
Finally, I disagree with the majority's conclusion that the jury was not clearly wrong in finding that Henderson was free from fault in causing the accident. The majority concedes the evidence shows the accident occurred in Stapleton's lane of travel. When a collision occurs between two vehicles, one of which is in the wrong lane of travel and the other is in the correct lane of travel, the driver in the wrong lane is presumed at fault and is required to exculpate himself from any fault, however slight, contributing to the accident. King v. Louviere, 543 So.2d 1327 (La.1989); Smiciklas v. Groendyke Transport, Inc., 505 So.2d 775 (La.App. 2d Cir.), writ denied, 506 So.2d 1231 (La.1987). Accordingly, as the majority recognized, Henderson is presumed to have been at fault in this accident, and had the duty to exculpate himself from that presumption of fault. Additionally, a motorist is held to a higher degree of care in adverse weather conditions and his duty to handle his vehicle in such a manner and at such a speed as to maintain control of it increases. Chastain v. Allstate Ins. Co., 212 So.2d 243 (La.App. 2d Cir.1968); Crockett v. United States Fidelity & Guar. Co., 229 So.2d 169 (La.App. 1st Cir.1969), writ refused, 255 La. 286, 230 So.2d 589 (1970). The evidence is crystal clear that Henderson was aware of the adverse weather conditions. This record convinces me that he was traveling greatly in excess of his stated 20 mph and too fast for the weather conditions. Had Henderson actually been traveling at his stated speed, the evidence presented by the expert shows that he could have easily stopped within the 650-1000 feet available to him after he first observed Brown's stopped vehicle. Henderson failed to exculpate himself from the presumption of his fault.
Based on the evidence presented I would find Henderson to be 60% at fault in causing this accident. The implied finding by the jury that Stapleton was also at fault for failure to move into the outside southbound lane after he had some appreciation *1327 of the dangerous situation is not clearly wrong. I would assess him with 40% of the fault.
Stapleton suffered significant injuries and is entitled to substantial general and special damages to be reduced by his percentage of fault. Mrs. Stapleton is likewise entitled to an award for loss of consortium to be reduced by her husband's percentage of fault. Bacle v. Wade, 607 So.2d 927 (La.App. 2d Cir.1992).
Finally, I would grant judgment in the intervention claim in accordance with the above fault findings.
For the reasons expressed, I respectfully concur in part and dissent in part from the majority opinion.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, LINDSAY and VICTORY, JJ.
Rehearing denied.
NOTES
[*] Our discussion of the plaintiff's negligence should not be read as an indication that we have concluded that plaintiff's actions absolved Henderson of any fault. We are not holding that defendant is not negligent because plaintiff had the last clear chance to avoid the accident. "Last clear chance" has been subsumed by the advent of comparative negligence. Rather, our discussion of plaintiff's negligence reflects the reasonable jury interpretation that plaintiff was the only negligent party. Plaintiff, especially in light of his statement, interpreted the severity of the situation early enough to act, while acknowledging that Henderson would have had time merely to react. Henderson was faced with a sudden emergency and, in light of that emergency, his responses were found reasonable by the jury, and we have concluded that this determination is not clearly wrong.